UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORTHOPAEDIC HOSPITAL,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>DJO GLOBAL, INC. and DJO FINANCE, LLC,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:19-cv-00970-JLS-AHG<br><br>**ORDER RESOLVING JOINT MOTION REGARDING PRIVILEGE WAIVER DISCOVERY DISPUTE**<br><br>**[ECF No. 78]** |

This matter comes before the Court on the parties' Joint Motion Regarding Privilege Waiver Discovery Dispute (ECF No. 78) ("the Joint Motion"). The parties seek resolution of their dispute regarding whether, due to the failure of Defendants DJO Global, Inc. and DJO Finance, LLC ("DJO") to object to certain deposition testimony of DJO's 30(b)(6) witness Bryan Monroe and Plaintiff's use of a privileged document at the deposition, DJO thereby waived the attorney-client privilege with respect to (1) the privileged document at issue and related testimony; and (2) *all* attorney-client communications regarding the "same subject matter," which Plaintiff argues extends to the patents-in-suit.

## I. BACKGROUND

Plaintiff Orthopaedic Hospital, d/b/a Orthopaedic Institute For Children ("Plaintiff") filed this action against DJO on May 23, 2019, alleging infringement of U.S. Patent No. 8,796,347 B2, U.S. Patent No. 8,658,710 B2, U.S. Patent No. 9,155,817 B2, U.S. Patent No. 9,242,025, and U.S. Patent No. 9,302,028 B2 (collectively, the "patents-in-suit"). ECF No. 1.

Plaintiff designated 57 topics for examination in its 30(b)(6) Notice to DJO. *See* ECF No. 82-13. DJO designated four 30(b)(6) witnesses for the identified topics, including Bryan Monroe, John Vinciguerra, Louie Vogt, and John Poulter. ECF No. 82-14. Plaintiff took the deposition of Mr. Monroe, who is DJO's Senior Vice President of Research and Development, on July 21, 2020, both in his personal capacity and as a Rule 30(b)(6) designee. ECF No. 78 at 4.

During the deposition, Mr. Monroe was questioned regarding DJO's awareness in April 2008 of one of the patent applications that later issued as one of the patents-in-suit. ECF No. 78-1, Monroe Dep. 159:10 – 160:19. During that line of questioning, Mr. Monroe testified that it was DJO's opinion at the time it learned of the application "that the patent wouldn't issue." *Id.* 160:6-7. When asked the basis of that opinion, Mr. Monroe testified "[i]t was just an opinion that we had from our attorney as we were doing our freedom to operate. I don't know the specifics, but the opinion back was that it was not valid." *Id.* 160:15-19. Mr. Monroe also explained his "understanding" that the person at DJO who

2

first learned of the patent application was John Vinciguerra, and that Mr. Vinciguerra had been working with outside counsel in connection with freedom-to-operate searches when he came across the application. *Id.* 159:15-25.

Following this testimony, Plaintiff's counsel confirmed with DJO's counsel on the record that DJO had not yet disclosed whether it intends to rely on an advice-of-counsel defense in this litigation. *Id.* 162:1-7. After a brief recess off the record, Plaintiff's counsel returned to questioning Mr. Monroe regarding the advice of outside counsel on the patent application. Mr. Monroe reiterated that Mr. Vinciguerra was the person at DJO who had communicated with outside counsel, whom Mr. Monroe identified as David Hill. *Id.* 163:4-19. Mr. Monroe did not know whether Mr. Hill provided a written opinion to DJO regarding the likelihood of issuance of Plaintiff's patent applications, whether DJO maintained a copy of Mr. Hill's opinion on the patent application, or whether Mr. Hill provided DJO with a written freedom to operate letter. *Id.* 163:24 – 164:21. Rather, Mr. Monroe testified that his knowledge was secondhand, based on Mr. Vinciguerra's interactions with Mr. Hill and the resultant conclusion that Plaintiff's patent would not issue. Accordingly, he did not know "the specifics" of the basis of that conclusion, "since it happened with John [Vinciguerra,]" but testified to DJO's understanding that "we felt that there was prior art and other activity happening in the development of E+ poly[ethylene] that would negate the patent." *Id.* 164:21 – 165:10.

At that point, Plaintiff's counsel turned to questioning Mr. Monroe about certain documents related to an exclusive license and product development agreement between DJO's predecessor, Encore Medical, and Dr. Mark Frankle (the "Frankle Agreement"). *See* ECF No. 78 at 5; Monroe Dep. 165:22 – 166:25; 170:11 – 172:4. Plaintiff produced the 95-page Frankle Agreement during discovery, and it is filed under seal in connection with this dispute. ECF No. 78-2. However, the agreement itself is only 88 pages; the final seven pages of the document are a letter dated October 19, 2011 from Mr. Hill to Aaron Bailey, the Director of New Product Development at DJO, regarding the likelihood of issuance of a new patent application filed by Dr. Frankle (the "Hill Letter"). *Id.* at 90-96.

3

The Hill Letter and Mr. Monroe's testimony regarding Mr. Hill's legal opinions about the validity of Plaintiff's pending patent application form the basis of Plaintiff's claim of privilege waiver in the dispute at hand.

Importantly, Dr. Frankle's patent applications discussed in the Hill Letter did not issue as any of the patents-in-suit. *See* ECF Nos. 78 at 9; 82-6. Nonetheless, Plaintiff contends that, because Mr. Hill's disclosed freedom-to-operate opinion regarding the Frankle patent application in the Hill Letter is similar to Mr. Hill's 2008 opinion regarding Plaintiff's application for one of the patents-in-suit (at least according to Mr. Monroe's characterization of the 2008 opinion), DJO has thereby waived privilege over not only the Hill Letter itself and related testimony, but also over "all documents and communications relating to DJO's knowledge of and response to [Plaintiff's] patent applications[.]" ECF No. 78 at 8.

Based on this position, Plaintiff's counsel David Mlaver sent a letter to DJO's counsel Amar Thakur on the same day of the Monroe deposition, July 21, 2020, seeking "the immediate further production of documents and communications between David Hill and DJO." ECF No. 82-6. Mr. Mlaver requested the immediate production of the 2008 Hill opinion on the patent-in-suit discussed by Mr. Monroe during his deposition "and all documents and communications relating thereto[,]" on the basis that Mr. Monroe's testimony regarding the 2008 opinion, "as well as lengthy testimony regarding another freedom-to-operate opinion provided by Mr. Hill stating a similar conclusion (which DJO has already produced), was provided voluntarily and without objection." *Id.*

The same day, DJO's counsel Bruce Zisser wrote to Plaintiff's counsel April Weisbruch notifying her that the Hill Letter was inadvertently produced. ECF No. 82-8. Mr. Zisser invoked Section 13 of the Protective Order in this case (ECF No. 42) and Rule 26(b)(5)(B) to claw back the Hill Letter and request that Plaintiff immediately destroy all copies of the document within its possession, custody, or control. ECF No. 82-8. Mr. Zisser also asked Ms. Weisbruch to request that the court reporter from the deposition remove the Hill Letter from the Frankle Agreement (marked as Exhibit 19 to the deposition) and strike

4

Mr. Monroe's testimony concerning the contents of the Hill Letter. *Id.* Finally, Mr. Zisser noted that DJO would supplement its privilege log to include the Hill Letter, which DJO did on July 24, 2020. *Id*; ECF No. 89-1 at 5.

Mr. Thakur also responded to Mr. Mlaver's letter the same day. ECF No. 82-7. Mr. Thakur disagreed that Mr. Monroe characterized or disclosed the content of any attorney-client communication between DJO and Mr. Hill; rather, Mr. Thakur contended that Mr. Monroe "was merely expressing DJO's opinion at the time[.]" *Id.* As for Mr. Mlaver's reliance on the production of the Hill Letter and related testimony to argue waiver, Mr. Thakur countered that the production of the Hill Letter was inadvertent, and noted that its return and destruction pursuant to the Protective Order and Rule 26(b)(5)(B) had already been requested. *Id.*

The parties sought Court intervention regarding the dispute on July 23, 2020, and the Court held a Telephonic Discovery Conference the following day. ECF Nos. 74, 75. The Court determined that motion practice was necessary to resolve the dispute. ECF No. 76. The present Joint Motion Regarding Privilege Waiver Discovery Dispute followed. *See* ECF Nos. 78 (sealed version of the Joint Motion); 82 (public, redacted version of the Joint Motion).

## II.   LEGAL STANDARD

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). In the Ninth Circuit, an eight-part test governs whether information is covered by the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (quoting *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009)).

5

Where information produced in discovery is subject to a claim of privilege, Rule 26 provides a procedure for the producing party to assert a claim of privilege after production, and, if the claim is contested, permit the receiving party to present the matter to the court for resolution:

> [T]he party making the claim [of privilege] may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.

Fed. R. Civ. P. 26(b)(5)(B).

In this case, it is undisputed that the materials at issue would ordinarily be protected by the attorney-client privilege—what is in dispute is merely whether DJO waived the privilege.

Rule 502 of the Federal Rules of Evidence sets forth limitations on waiver of the attorney-client privilege. *See* Fed. R. Evid. 502. Specifically, Rule 502(a) provides that, when a party's disclosure of a communication covered by the attorney-client privilege in a federal proceeding waives the privilege, the waiver extends to undisclosed communications or information if (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness be considered together. Fed. R. Evid. 502(a).

However, Rule 502(b) offers an escape hatch of sorts where the disclosure of a privileged communication is inadvertent. Under that provision, in order to avoid waiver based on disclosure of privileged information, the disclosing party must show: (1) the disclosure of the protected document was inadvertent; (2) the disclosing party took reasonable steps to prevent disclosure; and (3) the disclosing party promptly took reasonable steps to rectify the error of its inadvertent disclosure. Fed. R. Evid. 502(b).

While the receiving party bears the burden of challenging a claim of privilege under Fed. R. Civ. P. 26(b)(5)(B), once a challenge is made, the burden then shifts to the

6

producing party to prove each of the three elements of Fed. R. Evid. 502(b) has been met to establish the privilege was not waived. *Coleman v. Sterling*, No. 09-CV-1594-W (BGS), 2011 WL 13177041, at *3 n.4 (S.D. Cal. Nov. 4, 2011).

### III. DISCUSSION

#### A. **Whether DJO waived the privilege as to the Hill Letter**

The Court will first address whether DJO has met its burden under Rule 502(b) of showing that its disclosure of the Hill Letter should not operate as a waiver of the attorney-client privilege as to that document alone, before turning to the scope of any such waiver.

As a preliminary matter, the Court must evaluate the applicability of the parties' stipulated Protective Order in this matter (ECF No. 43) to the present dispute. Under Rule 26, any agreements reached by the parties regarding privilege issues, including the procedure to assert a privilege claim after production, as well as any Court orders that incorporate such agreements—i.e., stipulated protective orders—may be considered by the Court in determining whether a waiver has occurred. *See* Fed. R. Civ. P. 26(b)(5), advisory committee's note to 2006 amendment ("Agreements reached under Rule 26(f)(4) and orders including such agreements entered under Rule 16(b)(6) may be considered when a court determines whether a waiver has occurred").[1] Notably, "[s]uch agreements and orders ordinarily control if they adopt procedures different from those in Rule 26(b)(5)(B)." *Id.*

Section 4.3 of the parties' stipulated Protective Order in this matter sets forth the parties' agreed parameters regarding inadvertent disclosures of protected information:

> To the extent consistent with applicable law, the inadvertent or unintentional disclosure of Confidential Information that should have been designated as Protected Material, regardless of whether the information,

---

[1] This advisory committee's note cites to the 2006 version of Rule 26(f)(4), which requires the parties' discovery plan to include proposals regarding "any issues relating to claims of privilege . . . including—if the parties agree on a procedure to assert such claims after production—whether to ask the court to include their agreement in an order" and to the 2006 version of Rule 16(b)(6), which provides that the Court's scheduling order may incorporate such agreements.

7

document, or thing was so designated at the time of disclosure, **shall not be deemed a waiver in whole or in part of a Party's claim that the information, document, or thing be designated as Protected Material, either as to the specific information, document, or thing disclosed or as to any other material or information concerning the same or related subject matter**. Such inadvertent or unintentional disclosure may be rectified by the Producing Party **promptly** notifying in writing, **within a reasonable time after discovery of the unintentional disclosure**, counsel for all Parties to whom the material was disclosed that the material should have been designated Protected Material. Such notice shall constitute a designation of the information, document, or thing as Protected Material under this Order. The Producing Party shall provide copies of the properly marked information along with the written notice, or as soon thereafter as practicable. Upon timely correction of a designation, the Receiving Party shall return or destroy said undesignated Protected Material to the extent practicable and shall not retain copies thereof and shall undertake a best effort to correct the disclosure of such Protected Material contrary to the re-designation, including informing any unauthorized recipients of the existence and terms of this Order and demanding the return of the Protected Material. However, disclosure of such Protected Material prior to the receipt of notice under this paragraph shall not be deemed a violation of this Order.

ECF No. 43 at 8-9 (emphasis added).

However, Plaintiff argues that DJO failed to promptly take remedial measures to correct the claimed purported inadvertent disclosure of the Hill Letter, as required by both Fed. R. Evid. 502(b)(3) and the Protective Order. ECF No. 78 at 7-8. Indeed, the Protective Order incorporates the language of Rule 502(b)(3) by requiring the producing party to rectify an inadvertent disclosure by "promptly" notifying the receiving party in writing within a reasonable time after discovery of the disclosure. ECF No. 43 at 8. Therefore, the question of whether the disclosure of the Hill Letter constituted an inadvertent disclosure within the meaning of the Protective Order dovetails with the question whether the disclosure of the Hill Letter operated as a waiver pursuant to Rule 502(b).

Additionally, Section 13 of the Protective Order requires that, when a producing party gives notice that certain inadvertently produced material is subject to a claim of privilege or other protection, the receiving party's obligations "are those set forth in Federal

Rule of Civil Procedure 26(b)(5)(B)." *Id.* at 20. Because the procedures in the Protective Order are the same as those in Rule 26(b)(5)(B), there is no basis to find that the Protective Order should control the Court's analysis of whether there was a waiver and, if so, the scope of such waiver. *See* Fed. R. Civ. P. 26(b)(5), advisory committee's note to 2006 amendment; *see also Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, No. 06CV2804 BTM (WM), 2010 WL 275083, at *4 (S.D. Cal. Jan. 13, 2010) (holding that the parties' stipulated protective order did not govern a privilege waiver dispute, because while it provided that inadvertent disclosure of privileged documents would not constitute a waiver, "it does not address under what circumstances failure to object to the use of inadvertently produced privileged documents waives the privilege, which is what the Court must resolve here"). The Court will thus proceed with its analysis under Rule 502.[2]

  DJO bears the burden of proving each of the three elements of Rule 502(b) has been met in order to avoid waiver of the privilege over the Hill Letter. Plaintiff argues DJO cannot meet this burden, because its counsel failed to object to the use of the letter or the Monroe testimony regarding the letter on grounds of privilege during the deposition. ECF No. 78 at 8. This argument goes to the third prong of Rule 502(b), requiring the privilege holder to "promptly [take] reasonable steps to rectify the error" of an inadvertent disclosure. Fed. R. Evid. 502(b)(3). However, this rule does not require DJO to have "engage[d] in a post-production review to determine whether any protected communication or information has been produced by mistake" in order to escape waiver of the privilege. Fed. R. Evid. 502(b), advisory committee's explanatory note. The producing party is merely required "to follow up on any obvious indications that a protected communication or information has been produced inadvertently." *Id.*

---

[2] Even if the Court determined that the Protective Order controlled the analysis, DJO would still bear the burden of proving the Hill Letter was inadvertently disclosed within the meaning of the Protective Order. *See Callan v. Christian Audigier, Inc.*, 263 F.R.D. 564, 565-66 (C.D. Cal. 2009).

9

In applying Rule 502(b)(3), at least one other court in this district has held that "if a privileged document is used at a deposition, and the privilege holder fails to object immediately, the privilege is waived. . . . Failing to stop responses to questions at a deposition that elicit privileged information also waives the privilege." *Luna Gaming*, 2010 WL 275083, at *5. *Accord Brandon v. D.R. Horton, Inc.*, No. 07CV1256 J (POR), 2008 WL 2096883, at *3 (S.D. Cal. May 16, 2008), *as amended* (May 21, 2008) ("[F]ailure to assert the attorney-client privilege, especially during deposition, is an absolute waiver of the privilege . . . . Plaintiffs' failure to assert the privilege at Plaintiff Brandon's deposition is clear proof that, even if there was a privilege, it was absolutely and irrevocably waived, regardless of whether disclosure was inadvertent") (citing *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D 455, 459 (N.D. Cal. 1978) (". . . even if the statements were privileged, the privilege was waived. When plaintiff . . . was deposed on April 21, 1977, she described her conversations with Nielson without any objection from counsel for HAS. By failing to make a timely objection, HAS waived any privilege that may have existed with respect to the statements")).

However, the *Brandon* case "predated Rule 502(b)," which went into effect in September 2008, "and involved a document that was not privileged in the first place[.]" *Datel Holdings Ltd. v. Microsoft Corp.*, No. C-09-05535 EDL, 2011 WL 866993, at *5 (N.D. Cal. Mar. 11, 2011). Additionally, other courts evaluating the waiver question in the context of the use of privileged documents during depositions have distinguished *Luna Gaming* on the basis that counsel in that case "first asserted a privilege objection at a second deposition two months later and, even then, failed to follow up to obtain return of the document and failed to object to the use of the documents in summary judgment proceedings." *California Inst. of Tech. v. Broadcom Ltd.*, No. CV 16-3714-GW (AGRX), 2018 WL 1468371, at *4 (C.D. Cal. Mar. 19, 2018). The *Broadcom* court further noted that, notwithstanding the *Luna Gaming* court's use of the word "immediately," the *Luna Gaming* court cited to a District of Idaho case where counsel asserted the privilege "almost within the hour" of discovering an inadvertent production "as an example of a case in which

1  immediacy was satisfied." *Id.* (discussing *Multiquip, Inc. v. Water Mgmt. Sys. LLC*, 2009
2  WL 4261214 (D. Idaho Nov. 23, 2009)). Therefore, the *Broadcom* court expressed doubt
3  as to whether the facts of *Luna Gaming* "necessarily raise[d] the question of immediacy."
4  2018 WL 1468371, at *4. *See also Datel*, 2011 WL 866993, at *1, *5 (finding counsel's
5  failure to object immediately to the use of privileged documents and eliciting of related
6  testimony during a deposition did not constitute waiver, where, a few hours later while the
7  deposition was still ongoing, counsel interrupted the deposition to put the privilege
8  assertion on the record, and distinguishing *Luna Gaming* because there was no objection
9  during the deposition).

10  DJO contends that it did promptly take reasonable steps to rectify the error,
11  explaining that, because the Monroe deposition was remote and the Hill Letter was attached
12  to many other non-privileged documents, DJO's counsel could not tell from the remote
13  display of the document whether the Hill Letter had been intentionally produced. ECF No.
14  78 at 13. DJO argues Plaintiff's counsel knew that Plaintiff "was in possession of an
15  inadvertently produced legal letter, with a 'Privileged' legend[,]" and intentionally waited
16  until near the end of a "lengthy, remote deposition where documents are displayed remotely
17  and not always clearly" before using the Hill Letter. *Id.* DJO argues Plaintiff "should not
18  unfairly benefit from this tactic" and notes that the deposition ended only 25 minutes later,
19  such that DJO's counsel "was unable to ascertain the status of this document until after the
20  deposition concluded." *Id.* Therefore, DJO argues that the facts here are closest to those in
21  *Datel*, because, although Mr. Thakur did not assert privilege over the Hill Letter within the
22  remaining 25 minutes of the deposition after the letter was discussed, DJO identified the
23  letter as inadvertently produced and requested the destruction of the letter and related
24  testimony "within hours" of the deposition's conclusion. ECF No. 78 at 13.

25  While the Court does not read *Luna Gaming* as creating the bright-line rule urged
26  by Plaintiff—that failing to object to the use of a privileged document during a deposition

11

*always* necessarily waives the privilege[3]—the Court nevertheless finds that DJO waived the privilege over the Hill Letter here.

As an initial matter, DJO presents no argument on the first and second prongs of Rule 502(b), seemingly because Plaintiff "does not appear to contest that the [Hill Letter] was inadvertently produced or that DJO took reasonable steps to prevent disclosure." *Id.* at 12. However, DJO bears the burden on proving these prongs. DJO has not met that burden and does not explain the steps it took to prevent disclosure in the first place.

Moreover, DJO did not identify the Hill Letter as inadvertently produced until after Mr. Mlaver wrote to Mr. Thakur arguing that DJO's voluntary disclosure of the Hill Letter supported Plaintiff's position that DJO waived the attorney-client privilege as to *all* communications between Mr. Hill and DJO. *See* ECF Nos. 82-6, 82-7, 82-8. Therefore, under the circumstances, it appears that DJO's belated invocation of the inadvertent disclosure protections of the Protective Order and Fed. R. Civ. P. 26(b)(5)(B) was done only to bolster DJO's opposition to Plaintiff's assertion of subject matter waiver. Although the Court recognizes the technical barriers inherent in a remote deposition, whether or not the remote display of the document was clear, the coinciding testimony regarding the Hill Letter was unmistakably about an attorney-client communication:

> Q. Page 89 is the first page of a letter from David J. Hill of Chambliss, Bahner & Stophel, PC; right?
> A. Yes.

---

[3] For example, the Court sees very little difference between an objection two hours after the use of a privileged document while a deposition is still ongoing and an objection two hours after the use of a privileged document when the deposition has just concluded. Rule 502 was designed to be "flexible enough" to accommodate the Court's consideration of a number of factors, including the reasonableness of precautions taken to avoid inadvertent disclosure, the time taken to rectify the error, the scope of discovery, the extent of disclosure, the overriding issue of fairness, the number of documents to be reviewed, and the time constraints for production. Fed. R. Evid. 502(b), advisory committee's explanatory note. In other words, the rule allows for a fact-specific, case-by-case application. Applying any bright-line rule in an analysis governed by Rule 502(b) would thus be at odds with its design.

```
       . . .
       Q.     And this letter is addressed to Aaron Bailey, who's the director of new
       product development at DJO; right?
       A.     Correct.
       Q.     Is Mr. Bailey typically the person who works on getting freedom to
       operate opinions, or does that usually go to John Vinciguerra?
       A.     Well, Aaron is no longer with the company, for one. Two, normally, if
       I was doing this today, I would direct this all through our patent attorney in
       our DJO office and let her handle it.
              But at this time, it wasn't abnormal for Aaron or John or someone in an
       R&D capacity to communicate with David. . . .
       Q.     In this letter, Mr. Hill concluded that Dr. Frankle's patents likely would
       not issue; correct?
       A.     Yeah, let me look.
              (Document(s) reviewed.)
              Yeah, that looks to be the case.
```

ECF No. 78-1, Monroe Dep. 172:9 – 173:16.

This testimony makes quite clear that the document being discussed is a letter from counsel to DJO's director of new product development containing a freedom to operate opinion. Altogether, Mr. Monroe's testimony regarding the Hill Letter spanned approximately four minutes, without any privilege objection from counsel. Under Rule 502(b)(3), the producing party is required "to follow up on any obvious indications that a protected communication or information has been produced inadvertently." Fed. R. Evid. 502(b), advisory committee's explanatory note. This testimony constitutes such an obvious indication. However, counsel for the producing party did not follow up on the indication until after learning that Plaintiff was asserting subject matter waiver based in part on DJO's voluntary production of the Hill Letter.

Based on these considerations, the Court finds that DJO has failed to meet its burden under Rule 502(b) of showing that the disclosure of the Hill Letter should not operate as a waiver of the attorney-client privilege over that letter. Accordingly, the Court finds the privilege **WAIVED** with respect to the Hill Letter and Mr. Monroe's testimony related to that letter.

13

B. **Scope of waiver**

However, the Court rejects Plaintiff's argument that the disclosure of the Hill Letter, coupled with Mr. Monroe's testimony regarding Mr. Hill's purported 2008 opinion on one of the patents-in-suit, justify a finding of subject matter waiver as to "all documents and communications relating to DJO's knowledge of and response to [Plaintiff's] patent applications[.]" ECF No. 78 at 8.

To support its claim of subject matter waiver, Plaintiff relies on the proposition from *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) that "it has been widely held that voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." However, the rule from *Weil* "was modified when Rule 502(a) was adopted in 2008." *Gateway Deliveries, LLC v. Mattress Liquidators, Inc.*, No. 2:14-CV-02033 JWS, 2016 WL 232427, at *2 (D. Ariz. Jan. 20, 2016) (rejecting reliance on the same rule from *Weil* and another case predating Rule 502).

As of 2008, Rule 502(a) "establishes the new general rule that an intentional disclosure 'results in a waiver ***only of the communication or information disclosed***." *Gateway*, 2016 WL 232427, at *3 (quoting Fed. R. Evid. 502(a), advisory committee's explanatory note) (emphasis in original). Waiver of the attorney-client privilege as to a disclosed communication ***only*** extends to undisclosed communications or information if (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness be considered together. Fed. R. Evid. 502(a). "[S]ubject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." Fed. R. Evid. 502(a), advisory committee's explanatory note. Therefore, as long as the party asserting the privilege "is not selectively and misleadingly presenting the disclosed materials as evidence[,]" Rule 502 protects against a subject matter waiver. *Gateway*, 2016 WL 232427, at *3.

Significantly, Plaintiff does not argue that the disclosure of the Hill Letter—which does not concern applications for the patents-in-suit—supports a finding of subject matter waiver under Rule 502(a). Rather, Plaintiff relies on the Monroe testimony characterizing a privileged communication from Mr. Hill to Mr. Vinciguerra regarding the validity of Plaintiff's 2008 application for one of the patents-in-suit. *See* ECF No. 78 at 7-8. Specifically, because Mr. Monroe "testified at length about the circumstances and content of DJO's communications" with Mr. Hill regarding Plaintiff's pending patent applications, and DJO's counsel failed to object to any of the testimony, Plaintiff argues DJO intentionally thereby waived attorney-client privilege over ***all*** documents and communications regarding DJO's knowledge of and response to Plaintiff's patent applications, and that fairness requires the waiver not be limited to Mr. Monroe's testimony. *Id.*

In explaining when subject matter waiver should apply under Rule 502(a), many courts have employed the familiar sword/shield metaphor, enforcing a broad waiver where the producing party "plainly . . . plans to rely on the [intentionally disclosed] documents in the litigation[,]" and "fail[ed] to disavow" such reliance, thus appearing "primed to employ the favorable communications as a sword while guarding possibly damaging emails with the shield of the privilege[.]" *Theranos, Inc. v. Fuisz Techs., Ltd.*, No. C 11-5236 PSG, 2013 WL 2153276, at *4 (N.D. Cal. May 16, 2013). In contrast, the "fairness" consideration of Rule 502(a)(3) does not counsel in favor of a subject matter waiver in a case where "it is not clearly a situation in which [the party opposing waiver] might be using the privilege as 'both shield and sword.'" *Trireme Med., LLC v. Angioscore, Inc.*, No. 14-CV-02946-LB, 2016 WL 4191828, at *2–3 (N.D. Cal. Aug. 9, 2016) (citing *Theranos*, 2013 WL 2153276, at *1, and *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 576 (N.D. Cal. 2008)). *See also Gateway*, 2016 WL 232427, at *3 ("Here, Defendants assert that they will not present evidence of their counsel's advice because they are not pursuing an advice-of-counsel defense. The court will hold Defendants to this commitment and, accordingly, Defendants will not be using the attorney-client privilege

as both a shield and a sword. Considerations of fairness do not justify a subject matter waiver.").

Plaintiff invokes this sword/shield fairness consideration in the Joint Motion, arguing that "DJO cannot be permitted to argue that it determined the applications for the patents-in-suit would not issue or that the patents were not valid while barring [Plaintiff] from exploring the inputs to that decision-making process and the process itself. But that is exactly what DJO intends[.]" ECF No. 78 at 8. In support, Plaintiff points to the fact that, at Mr. Vinciguerra's July 28, 2020 deposition, DJO's counsel offered to "stipulate that" the facts disclosed in an interrogatory answer—that Mr. Vinciguerra became aware of Plaintiff's applications for the patents-in-suit in 2008 and 2009—were "derived from" a document identified in DJO's privilege log, but that DJO had no nonprivileged information about how it became aware of the applications. *Id.* at 6. Plaintiff further states that DJO's counsel instructed Mr. Vinciguerra not to testify regarding how he learned of the applications "or what Hill told him about them," but then proceeded to "elicit[] testimony regarding DJO's actions" upon learning of the applications, "but on recross again barred testimony regarding the inputs provided by Hill into the decision-making process." *Id.* Plaintiff asserts this conduct of eliciting testimony regarding DJO's conclusions, while barring testimony regarding the content of the communications themselves, constitutes "the paradigmatic 'sword and shield' scenario that FRE 502(a) was designed to protect against." *Id.* at 8.

In response, DJO explains that it "does not intend to waive any privilege to support its invalidity defense[,]" and that DJO's opinion regarding the validity of the applications for the patents-in-suit was a "lay opinion, based on discussions with non-lawyers[.]" *Id.* at 12. DJO denies that its opinion regarding Plaintiff's 2008 and 2009 patent applications was based on any validity opinion from Mr. Hill, and further denies that DJO will rely on any of the privileged Hill communications. *See id.* at 9 & n.2. DJO's denial that it will use any of the undisclosed Hill communications as a "sword" in this case is consistent with Mr. Vinciguerra's testimony regarding DJO's opinion of Plaintiff's applications for the patents-

16

in-suit. Specifically, after explaining that DJO did not consider getting its own patents in the same area because DJO "realized that there was nothing novel here" after "discussions with colleagues in this space," including "Mark Allen and Dave Brooks of Orthoplastics and Ryan Siskey and Steve Kurtz of Exponent[,]" Mr. Vinciguerra then explained the basis of DJO's opinion regarding the validity Plaintiff's patent applications:

> Q. . . . [D]id you make an effort to get up to speed on what DJO thought about the Orthopaedic patent applications?
> A. Yes.
> Q. And what did you do?
> A. I met with Ryan Siskey here in Austin, and he refreshed my memory about our decision process back then, and it was that because there was so much prior art in this space that we didn't feel that the Orthoapaedic Hospital patent or any other patents were novel in this space.
> Q. So DJO reached a decision that Orthopaedic patent applications were not issued because of prior art?
> A. Correct.
> Q. And besides Mark Allen, Ryan Siskey, Steven Kurtz and David Brooks, did anyone else influence DJO's decision that these patents were not issued based on the prior art?
> A. No.

ECF No. 82-12, Vinciguerra Dep. 206:11 – 207:22.

Mr. Vinciguerra's testimony on recross is also consistent with DJO's position that its opinion regarding the validity of Plaintiff's patent applications in 2008 and 2009 was not based on an undisclosed attorney-client communication with Mr. Hill:

> Q. Did DJO consult a lawyer to confirm its feeling that the patents weren't valid?
> A. No.
> . . .
> Q. Do you know one way or the other whether any conclusions you reached in conjunction with Ryan Siskey may have been influenced by anything that was told to you by David Hill?
> A. No.
> Q. You don't know one way or the other?
> A. No. No, they were not influenced by David Hill.

*Id.* 211:8-10; 211:18-25.

17

Although Mr. Vinciguerra's testimony is at odds with Mr. Monroe's testimony that he thought DJO's opinion regarding the validity of the 2008 application was based on an opinion from Mr. Hill, *see* Monroe Dep. 160:3-17, Mr. Monroe was not testifying based on firsthand knowledge. Indeed, Mr. Monroe testified that he "[didn't] know whether or not we had a written freedom to operate letter from [Mr. Hill] or not. All I know is that John did have interactions with David Hill, and the conclusion is we felt it wouldn't issue, that it wouldn't be valid." *Id.* 164:19-24. When pressed further on what exactly about the interaction between Mr. Vinciguerra and Mr. Hill led DJO to the conclusion that Plaintiff's patents likely wouldn't issue, Mr. Monroe responded, "***I don't know the specifics, since it happened with John.*** But our understanding is that there was – we felt that there was prior art and other activity happening in the development of E+ poly that would negate the patent." *Id.* 164:25 – 165:10 (emphasis added).

Also in line with DJO's position in the Joint Motion, counsel for DJO, Mr. Zisser, wrote to Plaintiff's counsel Ms. Weisbruch on July 23, 2020, informing her that DJO's counsel had reviewed the letters DJO received from David Hill "and confirmed that none expresses an opinion with respect to the validity of any Orthopaedic Hospital patent or patent application. Consequently, Mr. Monroe's testimony was not conveying anything he had learned from counsel and could not, therefore, waive any privilege." ECF No. 82-15. Mr. Zisser further stated that DJO was prepared to submit the letters for *in camera* review if necessary to resolve the issue. *Id.*

Lastly, in considering the question of fairness under Rule 502(a)(3), the Court finds persuasive DJO's point that Mr. Monroe was not designated to testify on DJO's knowledge of the patents-in-suit. ECF No. 78 at 9, 12. The 30(b)(6) topics relevant to the Monroe testimony at issue are Topic Nos. 49 and 52.[4] However, Mr. Vinciguerra was designated

---

[4] Topic No. 49 concerns "DJO's knowledge of each of the Patents-In-Suit, including but not limited to when DJO first became aware of the patent and/or any application therefor; the source of the information; the identify of the persons) who received the information on

to testify on Topic No. 49, and none of the four 30(b)(6) witnesses was designated to testify on Topic No. 52. *See* ECF No. 82-14. Plaintiff's argument that Mr. Monroe's testimony relates to topics on which he was designated to testify, namely, Topic No. 51—"Any attempt to design or re-design, in whole or in part, any E+ Part and/or E+ Product so as to avoid infringing any claim of the Patents-in-Suit"—or Topic No. 55—"Your formal, informal, stated, or generally understood intellectual property licensing policies and procedures"—is unavailing. *See* ECF No. 78 at 7; ECF No. 82-13 at 14-15. Mr. Monroe's testimony regarding DJO's opinion on the validity of Plaintiff's patent applications, and in particular whether that opinion was based on the advice of Mr. Hill, does not concern either of these topics.

More significantly, the Court has no reason to distrust defense counsel's on-the-record representations to both the Court and to opposing counsel that Mr. Monroe's testimony on that subject was simply wrong, or, at the very least, that any opinion given by Mr. Hill regarding the validity of the applications for the patents-in-suit was not in writing and is not being withheld. DJO insists that "there is no undisclosed opinion on the validity of the patents-in-suit or their related applications[.]" ECF No. 78 at 12. The Court takes DJO at its word on both this representation as well as its related on-the-record assertion that it "does not intend to waive any privilege to support its invalidity defense." *Id.* In other words, the Court is convinced that DJO has no intention of using disclosed privileged communications to support its case, while withholding others that might weaken it, as necessary to justify a finding of the subject matter privilege waiver urged by Plaintiff.

---

behalf of DJO; when and how DJO first obtained a copy of that patent and/or any application therefor; and any actions taken by DJO or any of its directors, officers, or employees as a result of DJO's awareness of the patent." ECF No. 82-13 at 13-14. Topic No. 52 concerns "[a]ny infringement opinion, validity opinion, opinion of counsel, or any other legal opinion concerning the Patents-In Suit, including any opinion related to one [or] more of the Patents-In-Suit, including any opinion related to one of more of the Patents-In-Suit and/or any Related Patent." *Id.* at 14.

19

A subject matter waiver "is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502(a), advisory committee's explanatory note. This is not such a situation. Accordingly, the Court **DENIES** Plaintiff's request that the Court find a subject matter waiver requiring DJO to produce "all documents and communications relating to DJO's knowledge of and response to [Plaintiff's] patent applications."

### IV.   CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

(1)   The Court **GRANTS** Plaintiff's request to find that Defendants have **WAIVED** the attorney-client privilege with respect to the October 19, 2011 letter from David Hill to Aaron Bailey (the "Hill Letter"), located at docket entry ECF No. 78-2 at 90-96, and all deposition testimony elicited from Bryan Monroe related to this letter.

(2)   The privilege waiver as to the Hill Letter does not extend to any other undisclosed communications. Accordingly, Plaintiff's request for a finding of subject matter waiver pursuant to Federal Rule of Evidence 502(a) is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 8, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge