UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORTHOPAEDIC HOSPITAL d/b/a Orthopaedic Institute For Children,<br><br>Plaintiff,<br><br>v.<br><br>DJO GLOBAL, INC. and DJO FINANCE LLC,<br><br>Defendants. | Case No.: 19-CV-970 JLS (WVG)<br><br>**ORDER (1) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>(ECF Nos. 88, 109) |

Presently before the Court is Defendants and Counter Claimants DJO Global, Inc. and DJO Finance LLC's (collectively, "Defendants") Motion for Summary Judgment ("Def. MSJ," ECF No. 109). Plaintiff and Counter Defendant Orthopaedic Hospital filed an Opposition to ("Pl. Opp'n," ECF No. 118), and Defendants filed a Reply in support of ("Def. Reply," ECF No. 120), Defendants' Motion for Summary Judgment. Also before the Court is Plaintiff's Motion for Partial Summary Judgment ("Pl. MSJ," ECF No. 88). The filings pertaining to this Motion are Defendants' Response in Opposition to ("Def. Opp'n," ECF No. 110), and Plaintiff's Reply in Support of ("Pl. Reply," ECF No. 115), Plaintiff's Motion.

The Court heard oral argument on the present Motions on November 19, 2020. *See* ECF Nos. 122, 128. After reviewing the Parties' arguments, the evidence presented, and the law, the Court **DENIES WITHOUT PREJUDICE** Defendants' Motion and **DENIES WITHOUT PREJUDICE** Plaintiff's Motion.

## BACKGROUND

Plaintiff filed this action against Defendants alleging infringement of five related U.S. Patents: U.S. Patent Nos. 8,796,347 (the "'347 patent"), 8,658,710 (the "'710 patent"), 9,155,817 (the "'817 patent"), 9,242,025 (the "'025 patent"), and 9,302,028 (the "'028 patent") (collectively, the "Asserted Patents"). Each of the Asserted Patents is entitled "Oxidation-Resistant and Wear-Resistant Polyethylenes for Human Joint Replacements and Methods for Making Them." The Asserted Patents claim methods for making polyethylene orthopedic implants that exhibit less wear, allowing the implants to be used actively for a longer period of time. Plaintiff alleges that Defendants' methods for manufacturing certain orthopedic implants (the "Accused Products") infringe the Asserted Patents under 35 U.S.C. § 271(a), (b), and (g). Compl. at 19–53, ECF 1.

Plaintiff filed this action against Defendants on May 23, 2019, asserting fifteen causes of action for direct and induced infringement. The Parties disputed the meaning of four claim terms that required construction. On June 29, 2020, the Court adopted Plaintiff's construction of the four disputed terms. *See* ECF 70 at 18. Plaintiffs filed the present Motion for Partial Summary Judgment on August 24, 2020. ECF No. 88. Defendants filed the present Cross Motion for Summary Judgment on October 22, 2020. ECF No. 109.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

## ANALYSIS

**I.   Defendants' Motion**

Defendants seek summary judgment in their favor on the ground that they are not the correct defendants. *See* Def. MSJ at 6–9. Defendants allege they are nonoperational holding companies not involved in either the manufacture or sale of the Accused Products,

and therefore they cannot be liable for patent infringement even if the Accused Products are made using an infringing method. *Id.* at 6. "Summary judgment should be granted for the defendant if undisputed facts show that a plaintiff has named the wrong party as the defendant." *Evans v. BBG Commc'ns, Inc.*, No. 10-CV-542 H (NLS), 2011 WL 13177603, at *2 (S.D. Cal. Mar. 2, 2011) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992); *Oghogho v. Operating Engr's Local 3 Dist. 80*, No. CIV S-07-1570 LKK DAD PS, 2009 WL 238091 (E.D. Cal. Jan. 28, 2009)). Drawing all justifiable inferences in favor of Plaintiff, *see Anderson*, 477 U.S. at 255, the Court concludes genuine issues of material fact exist as to which entity is responsible for the allegedly infringing acts.

Generally, a parent corporation and its subsidiary are separate corporate forms, *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) (citing *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003)), and the rule of corporate separateness "insulates a parent corporation from liability created by its subsidiary, notwithstanding the parent's ownership of the subsidiary," *id.* at 1071 (citing *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)).

Defendants allege they are indirect parent companies to Encore Medical, which is the entity that performs the manufacturing process and sells the Accused Products. Def. MSJ at 8. Encore Medical does business under the brand name "DJO Surgical." *Id.* Defendants claim that "'DJO' is a brand name that employees and vendors use to refer to the Defendants' subsidiaries' overall medical technology business." Def. Reply at 1. Defendants argue that, "[a]s holding companies, the Defendants are not involved in the manufacture of the Accused Products" and that "Encore Medical, not Defendants, is responsible for entering into Sales Agency Agreements for distribution of the Accused Products." *Id.* at 7 (citing Def. SMF ¶¶ 8–10, ECF 109-1). Additionally, Defendants argue they are "incapable of inducing infringement under 35 U.S.C. § 271(a) because they have no employees." *Id.* at 8.

///

The record raises genuine issues of material fact as to whether Defendants were involved in the manufacture and sale of the Accused Products. *See Kiprilov v. Nat'l Bd. of Med. Examiners*, No. EDCV160952JGBSPX, 2016 WL 6900723, at *5 (C.D. Cal. Aug. 25, 2016) ("[A] plaintiff must establish that the defendant in question was involved in the decisions giving rise to her cause of action." (citations omitted)).  As an initial matter, the Court finds the timing of this argument suspect after the Parties have vigorously litigated the substance of this action for almost two years.[1]  Defendants argue that they stated in their answer that Encore Medical, not either Defendant, manufactures and sells the Accused Product.  Def. Reply at 1; *see* ECF No. 25 at ¶ 12 ("DJO admits that indirect subsidiaries of DJO Global develop, manufacture, market, and/or distribute orthopedic products.").  However, stating indirect subsidiaries are involved in the process is not the same as affirmatively stating that a party is the improper defendant.  As Plaintiff points out, Defendants did not file a motion to dismiss or raise this argument as an affirmative defense or a counterclaim.  Pl. Opp'n at 3.  Defendants did not raise this argument at the initial scheduling conference in September 2019 or the hearing on claim construction in June 2020.  Pl. Reply at 8.  The record further contradicts Defendants' position.  In the Joint Discovery Plan, Defendants stated that "there are no anticipated additional parties." Pl. Opp'n at 2 (quoting Ex. JJJ at 6, ECF No. 118-14).  If Defendants are nonoperational holding companies with "no employees or day-to-day operations," Def. MSJ at 3, as Defendants claim, the Court is surprised Defendants did not state so loudly and often every time Defendants appeared before this Court.

Other evidence raises questions about Defendants' involvement in the alleged infringement.  For instance, Defendants have repeatedly limited the definitions of "DJO"

---

[1] At oral argument on the present Motions, Defendants stated, "I think it was handled almost, like, too friendly, too [collegial], as the case went forward, but all of the information was provided." MSJ Hr'g Tr. 15:11-15:13, Nov. 19, 2020, ECF No. 128.  While the Court encourages parties to act with collegiality, the Court finds it prudent to remind Defendants that the Court has limited resources.  When a party is in the position to inform the Court of relevant, potentially dispositive information, it should do so promptly to save all involved time that could be dedicated to other matters.

and "Defendants" to only the named Defendants, and then used "DJO" in admissions regarding the manufacture and sale of the Accused Products. *See* Pl. Opp'n at 3 (citing ECF 49 at 1). In their responses to interrogatories, Defendants stated the following:

> DJO objects to the definitions of "DJO Global," "DJO Finance," "DJO," and "Defendants" as overly broad, unduly burdensome, and as seeking information outside of DJO's possession, custody, or control to the extent that they purport to include non-parties to this Action. *DJO will respond on behalf of itself as party to this Action* pursuant to DJO's obligations under the applicable rules to provide responsive, non-privileged documents or information in its possession, custody, and/or control.

*Id.* at 5 (quoting Ex. EE at 6, ECF No. 88-32) (emphasis added). In a supplemental interrogatory response following this disclaimer, Defendants went on to describe the manufacturing processes and sales of the Accused Products:

> The material used to manufacture DJO's E+ polyethylene components is produced according *to one of three DJO material specifications*, MS#41, MS#106 or MS#165.
> . . .
> The company responsible for machining a particular part, which may include Orthoplastics, will receive the polyethylene preform from Orthoplastics and machine the requested part from the preform polyethylene according *to DJO specifications*.

*Id.* at 3 (quoting Ex. A at 9) (emphasis added). Plaintiff argues that defining "DJO" as solely the named Defendants and then stating the Accused Product is made to "DJO specifications," qualifies as an admission that Defendants direct and control the manufacturing process. *See id.* at 5. Considering the evidence in a light most favorable to Plaintiff, the Court finds that a genuine issue of material fact exists regarding Defendants'

///
///
///
///

level of involvement. The use of the generic term "DJO" throughout interrogatories, depositions, and other evidence does not clarify which entity is acting.[2]

Other evidence more straightforwardly implicates Defendants' involvement. For example, the website where the Accused Products are marketed is djoglobal.com, the name of one of the defendants. Although the website currently lists non-party DJO, LLC as the owner of the website, Def. Opp'n at 10, in August 2020 the website listed DJO Global, Inc. as the owner, Pl. Reply at 7. In June 2020, the website's legal notice stated that "[t]his Internet site is wholly owned and operated by DJO Global Inc." *Id.* Additionally, sales agents use email addresses with the "djoglobal.com" domain name and include "DJO Global, Inc." in their signature blocks. *See* Ex. III, ECF No. 119.

Defendants argue that Plaintiff "has neither pled nor made any attempt to justify piercing the corporate veil." Def. MSJ at 6. Defendants analogize their situation to *Smith v. Garlock Equip. Co.*, in which the Federal Circuit found the plaintiff did not produce affirmative evidence to support piercing the corporate veil when the defendant's separately incorporated sister company sold the allegedly infringing product. 658 F. App'x 1017, 1028 (Fed. Cir. 2016). However, even assuming that the allegedly infringing acts here were wholly performed by Defendants' subsidiaries, there are still genuine issues of material fact as to whether Defendants are directly liable for directing or controlling their subsidiaries' performance or indirectly liable for inducing their corporate subsidiaries' infringement. *See Akamai Tech., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) (per curiam) (holding an entity is liable for others' performance of method steps where that entity directs or controls others' performance or where the actors form a joint enterprise); *Astornet Techs. Inc. v. BAE Sys., Inc.*, 802 F.3d 1271, 1279 (Fed. Cir. 2015) (finding district court erred by not considering whether parent company

---

[2] There are countless instances in the record where "DJO" is used ambiguously without identifying a specific entity. Defendants repeatedly refer to "DJO's products," "DJO part[s]," and "DJO specifications." Pl. Reply at 6 (citing Ex. KK at 3–4, ECF No. 115-4; Ex. LL at 11–13, ECF No. 115-5; Ex. F at 10, ECF No. 88-7).

could be directly liable for its own wrongful acts of inducing indirect corporate subsidiary). Plaintiff argues that Defendants already admitted that they direct and control the manufacturing process of the Accused Products conducted by subsidiary entities. Pl. Reply at 7 (quoting ECF No. 25 ¶ 25) ("DJO admits that the operations of DJO Global and DJOFL [DJO Finance, LLC] are conducted by their indirect subsidiaries. DJO further admits that DJOFL has had consolidated books and records for itself and its subsidiaries . . . .").

Defendants have failed to prove the absence of a genuine issue of material fact, which precludes summary judgment. Accordingly, the Court **DENIES WITHOUT PREJUDICE** Defendants' Motion for Summary Judgment.

## II.   Plaintiff's Motion

In its Motion for Partial Summary Judgment, Plaintiff requests that the Court find Defendants liable for direct infringement of the '025 patent for the manufacture, offer for sale, and sale of Accused Products under 35 U.S.C. §§ 271(a) and 271(g). *See* Pl. MSJ at 1. Plaintiff argues that "there can be no legitimate dispute that the Accused Part is manufactured in accordance with each step of the method claimed in claim 1 of the '025 patent, that [Defendants] direct[] and control[] that manufacturing process, or that [Defendants] offer[] for sale and sell[] such Part throughout the United States." *Id.* at 8.

The Court cannot reach the issue of infringement when a genuine issue of material fact exists regarding which entity or entities are the proper defendants. *See supra* Section I. Therefore, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Partial Summary Judgment.

///
///
///
///
///
///
///

## CONCLUSION

Based on the foregoing, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Partial Summary Judgment and **DENIES WITHOUT PREJUDICE** Defendants' Motion for Summary Judgment.

**IT IS SO ORDERED**

Dated:  December 4, 2020

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge