UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORTHOPAEDIC HOSPITAL,<br><br>   Plaintiff,<br><br>v.<br><br>DJO GLOBAL, INC. and DJO FINANCE, LLC,<br><br>   Defendants. | Case No.: 3:19-cv-00970-JLS-AHG<br><br>**ORDER ON JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE**<br><br>**[ECF No. 106]** |

This matter comes before the Court on the parties' Joint Motion for Resolution of Discovery Dispute (the "Joint Motion"). ECF No. 106. The parties seek resolution of their dispute regarding the privilege log Plaintiff Orthopaedic Hospital ("Plaintiff") served on Defendants DJO Global, Inc. and DJO Finance, LLC ("Defendants" or "DJO").

**I.    BACKGROUND**

Plaintiff filed this action on May 23, 2019, alleging infringement of U.S. Patent No. 8,796,347 B2, U.S. Patent No. 8,658,710 B2, U.S. Patent No. 9,155,817 B2, U.S. Patent No. 9,242,025, and U.S. Patent No. 9,302,028 B2 (collectively, the "patents-in-suit"). ECF No. 1.

During the discovery phase of the case, Plaintiff produced over 2,000 documents in response to document requests from Defendants. ECF No. 106 at 1. The parties have met

and conferred by telephone, email, and letter regarding the scope of documents to be produced and the requirements for Plaintiff's privilege log. As will be discussed more thoroughly below, the parties now disagree as to what agreements were made during those negotiations.

## II.  LEGAL STANDARD

"The party asserting the attorney-client privilege has the burden of proving that the privilege applies to a given set of documents or communications." *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992); *see also United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (the party asserting the privilege must demonstrate that the relationship exists and that the communication is privileged). A proper assertion requires a showing of the following elements: "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (quoting *In re Grand Jury Investigation*, 974 F.2d at 1071 n.2); *Regents of Univ. of California v. Affymetrix, Inc.*, 326 F.R.D. 275, 278 (S.D. Cal. 2018).

The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). In serving this purpose, the privilege protects only communications—disclosures of underlying facts are not protected. *Id.* at 395. Also, "[t]he fact that a person is a lawyer does not make all communications with that person privileged." *United States v. Martin,* 278 F.3d 988, 999 (9th Cir. 2002). Indeed, courts strictly construe the privilege "[b]ecause it impedes full and free discovery of the truth." *Id.* (quoting *Weil v. Inv./Indicators, Research & Mgmt., Inc.,* 647 F.2d 18, 24 (9th Cir. 1981)).

///

Under the Federal Rules of Civil Procedure, a party withholding otherwise discoverable information on the basis of attorney-client privilege must (1) make the claim expressly and (2) "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). Typically, this is accomplished using a privilege log that identifies "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." *In re Grand Jury Investigation*, 974 F.2d at 1071; *Kannan v. Apple Inc.*, No. 17CV07305EJDVKD, 2019 WL 5589000, at *1 (N.D. Cal. Oct. 30, 2019). However, in adding the requirement to identify privileged documents that are being withheld, the Advisory Committee provided an oft overlooked acknowledgement of the realities of civil litigation in noting that "[d]etails concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories." Fed. R. Civ. P. 26(b)(5) advisory committee's note to 1993 amendment.

For a case such as this where federal patent law provides the rule of decision, federal statutory and common law govern decisions over claims of privilege. Fed. R. Evid. 501.

### III. DISCUSSION

#### A. Documents Between Orthopaedic Hospital and Hospital Boards or Committees

Defendants first object to Plaintiff withholding the documents identified on the log as OH_Priv0103-108 on the grounds that none of the authors or recipients are attorneys. ECF No. 106 at 2. The author for these documents is listed as "Orthopaedic Hospital" and the recipients are either the "Orthopaedic Hospital Board of Directors," the "Orthopaedic Hospital Board of Trustees," or the "Orthopaedic Hospital Strategic and Finance

1  Committee." *Id.* While in-house counsel may have attended these meetings, Defendants
2  argue that the presence of an attorney does not automatically confer privilege. *Id.* Plaintiff
3  responds that "the withheld Board minutes reflect privileged discussions of ongoing and
4  planned legal proceedings, including advice received from counsel and the generation of
5  information to share with counsel for the purpose of obtaining legal advice and developing
6  legal strategy." *Id.* at 15.

7        Defendants are correct that Plaintiff has not satisfied its burden of identifying the
8  attorney who provided legal advice at or for these meetings, or of narrowing its assertion
9  of privilege to portions of the minutes addressing those legal communications. Plaintiff
10 relies on *Newmark Realty Capital, Inc. v. BGC Partners, Inc.*, 2018 WL 2357742 at *2-3
11 (N.D. Cal. 2018) for the proposition that, whether attorneys were present or specifically
12 referenced in the Board minutes, it is "plausible" that privileged information could have
13 been discussed at the board meetings. But the court in *Newmark* was analyzing whether *in*
14 *camera* review was warranted, which involves a different standard. *Newmark Realty*
15 *Capital*, 2018 WL 2357742 at *3. Moreover, the board minutes in question in *Newmark*
16 were not withheld completely, as they appear to have been here, but carefully redacted. *See*
17 *id.* In finding that *in camera* review was not warranted, the court "emphasize[d] that the
18 redactions appear to be very selective as they are very limited in scope" and noted that the
19 redactions were "in locations within the minutes that logically could be expected to include
20 attorney-client privileged or work product information." *Id.* Thus, this case does not
21 support Plaintiff's argument. Plaintiff's reliance on *Arfa v. Zionist Org. of Am.*, 2014 WL
22 815496, at *6 (C.D. Cal. March. 3, 2014) and *Zurich Am. Ins. Co. v. Superior Court*, 155
23 Cal. App. 4th 1485, 1494-1504 (2007) likewise is inapposite because these cases apply
24 California privilege law, which is inapplicable to a federal court in a non-diversity action
25 addressing federal patent claims. *See* Fed. R. Evid. 501 (explaining that federal common
26 law governs claims of privilege unless the case involves a claim or defense for which state
27 law supplies the rule of decision).
28 ///

While the Court is cognizant of the fact that discussions in board meetings may be intertwined with discussions of legal advice rendered by counsel (who may or may not be present at the meeting), this does not by default cloak all board meeting minutes in a shroud of secrecy. *See Larson v. Harrington*, 11 F. Supp. 2d 1198, 1200–01 (E.D. Cal. 1998) (finding attorney-client privilege not properly asserted where the record did not indicate who was present at board meetings and explaining that "the fact that confidential communications within the privilege may have been made at the board meetings does not cloak the entire proceeding in secrecy"). It appears from the record before the Court that Plaintiff did not produce redacted minutes from any of the meetings, instead claiming that "the only responsive portions of the logged Board minutes are the privileged sessions of the Board addressing issues, legal advice and strategy with respect to DePuy, DJO and other infringers."[1] ECF No. 106 at 15-16. Though these meetings did occur in the seven months leading up to the filing of this lawsuit and may well contain privileged material as a result, by not producing even redacted minutes, Plaintiff deprived Defendants of the ability to assess whether the hospital Board of Directors, Board of Trustees, and Strategic and Finance Committee also discussed related, non-privileged topics. As previously noted, the *factual* information underlying the discussions must be disclosed. *See Upjohn,* 449 U.S. at 395-96; *S. California Hous. Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*, No. CV 04-2716-CBM(CTX), 2005 WL 3954720, at *4 (C.D. Cal. Apr. 25, 2005) (confirming that "attorney-client privilege only protects disclosure of communications" and "[t]hus, factual information underlying plaintiffs' claims or information not involving counsel's advice

---

[1] The parties frequently reference DePuy. In March of 1999, Plaintiff and DePuy Orthopaedics, Inc. entered into a research agreement and a Patent Rights and License Agreement governing their joint research and related patent applications pertaining to certain polyethylene technology. ECF No. 106 at 14. These patent applications lead to the '110 Family, which includes the patents-in-suit in the instant litigation. *Id.* A dispute arose between Plaintiff and DePuy, resulting in litigation involving claims of patent infringement, breach of contract, and fraud. *Id.*

5

must be disclosed"). And, because Plaintiff cannot confirm that a lawyer was present on all three boards (other than to say "OH has consistently had at least one lawyer as a Board member") or that a lawyer's correspondence was discussed, there is no way to discern from Plaintiff's log whether each of the six meetings addressed solely privileged communications. Accordingly, because Plaintiff's log provides insufficient information to allow Defendants to verify Plaintiff's privilege claims, Plaintiff is ordered to supplement this portion of the log and provided redacted minutes, if appropriate.

### B. Logged Patent Prosecution Files

Plaintiff described the remainder of the logged documents as being from the patent prosecution file and withheld them on the basis of attorney-client privilege and a joint privilege with DePuy. ECF No. 106-2. Defendants argue that the log does not sufficiently describe these documents and that Plaintiff's assertion of joint privilege is incomprehensible, unsupported, and should be overruled. ECF No. 106 at 4-5. Plaintiff responds that all of the logged documents, other than the Board minutes, relate to documents located in Orthopaedic Hospital's lawyers' files and reflect requests for legal advice, the generation of such advice, and/or the provision of legal advice with regard to patent prosecution. *Id.* at 16. Further, Plaintiff points out that Defendants do not argue that the documents were withheld improperly on this basis because they could not justify such an argument. *Id.* Thus, Plaintiff contends there is no point in wasting resources to determine whether joint privilege *also* applies. *Id.*

Plaintiff is correct that patent prosecution files often are protected by attorney-client privilege. Over twenty years ago the Federal Circuit took up the question of whether an invention record is protected by the attorney-client privilege.[2] The court began by

---

[2] As a threshold matter, while the Court applies federal common law from the Ninth Circuit to the procedural issue of whether board minutes are privileged, the Federal Circuit has made clear that "[its] own law applies to the issue whether the attorney-client privilege applies to an invention record prepared and submitted to house counsel relating to a litigated patent." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000).

acknowledging that whether privilege attaches should be determined on a case-by-case basis. *Id.* at 805 (citing *Upjohn*, 449 U.S. at 396). In the *Spalding* case, the Federal Circuit found that Spalding had submitted the invention record to its "corporate *legal* department" for the purpose of determining whether the invention was patentable. *Id.* (emphasis in original). On this basis, it concluded that the attorney-client privilege applied. *Id.* The court went on to reject Wilson's argument that the technical and prior art portions of the record should be disclosed because they did not ask for legal advice, explaining "we do not consider that it is necessary to dissect the document to separately evaluate each of its components. It is enough that the overall tenor of the document indicates that it is a request for legal advice or services." *Id.* at 806. Accordingly, the court concluded that "since Spalding's invention record was prepared and submitted primarily for the purpose of obtaining legal advice on patentability and legal services in preparing a patent application, [] it is privileged in its entirety." *Id.* Since that time, the Federal Circuit has continued to protect communications with lawyers related to patent applications and patentability. *See, e.g., In re Queen's Univ. at Kingston,* 820 F.3d 1287, 1298 (Fed. Cir. 2016) (quoting *In re Spalding*, 203 F.3d at 806) ("[a] client has a reasonable expectation that all communications relating to 'obtaining legal advice on patentability and legal services in preparing a patent application' will be kept privileged").

That being said, a large number of the entries on Plaintiff's log contain neither a date nor a description that allows Defendants any indication of the nature of the document withheld. *See* Fed. R. Civ. P. 26(b)(5); *see also Apple Inc. v. Samsung Elecs. Co.,* 306

---

The Federal Circuit reasoned that this issue involves consideration of whether an invention warrants patent protection and thus "clearly implicates substantive patent law." *Id.* at 804. Here too, the documents at issue in the prosecution files relate to whether the technology was patentable and to issues of validity in the instant litigation. The Court, therefore, finds it appropriate to apply Federal Circuit law to this issue.

F.R.D. 234, 239–40 (N.D. Cal. 2015) (noting that generic statements that documents reflect legal advice may not always be sufficient to support a privilege assertion). For instance, there are pages and pages of entries from patent attorney Wean Khing Wong, with no date or recipient listed, that are described as "[d]ocument from patent prosecution file authored by counsel providing legal advice" or "[d]ocument from patent prosecution file from counsel reflecting legal advice."[3] ECF No. 106-2 at 21-42. To the extent these are communications regarding the patentability of the technology in question, they are likely privileged. If they reflect technical research by counsel not relied upon during the prosecution of the patents-in-suit or communicated to the client, they might not be. Once a patent issues, the prosecution history is a matter of public record and thus prior art relied upon, responses to office actions, etc. are publicly available. What remains in prosecution files, therefore, is more likely to be communications reflecting or soliciting legal advice regarding these public filings. But, what is apparent here is that the log does not offer enough detail for Defendants to evaluate the privilege assertions.

Plaintiff relies on a "Log Agreement" at Exhibit J to the Joint Motion to argue that Defendants waived any right to seek greater detail from Plaintiff in its privilege log. *E.g.,* ECF No. 106 at 17 (claiming that DJO's requests are simply "buyer's remorse"). The Court addresses the lack of evidence of an agreement between the parties in more detail below. Nonetheless, Plaintiff's proposal in Exhibit J is for a "privilege log" without any limitation

---

[3] The Court is aware that Wean Khing Wong is a patent attorney because the August 28, 2020 letter from Plaintiff's counsel to Defendants' counsel provides a table clarifying the role and affiliation of the individuals named on the log and is an acceptable means of explaining the assertion of privilege. Supplementing the log to add this information is not necessary. *See In re Grand Jury Investigation*, 974 F.2d at 1071 (acknowledging that a privilege log is only one means of establishing privilege and accepting clarifying affidavits as additional evidence); *see also Kannan*, 2019 WL 5589000, at *1 (confirming that "a party may substantiate a claim of privilege by other means" such as briefs, declarations, or other forms of proof).

or specification as to the information that would be provided. The only reasonable way to read this proposal is that Plaintiff would provide a privilege log that would make a "*prima facie* showing that the privilege protects the information the party intends to withhold." *In re Grand Jury Investigation*, 974 F.2d at 1071. Plaintiff's privilege log does not comply with this standard. In addition to the deficiencies noted above, Plaintiff claims "Joint Privilege" over nearly every document on the log, even though there is no indication that many of those documents were ever shared with DePuy, the asserted joint holder of the privilege. The log on its face does not make the *prima facie* showing of privilege for many of the withheld documents, which is the purpose of a privilege log. *Id.*

Accordingly, because Plaintiff's log provides insufficient information to allow Defendants to verify Plaintiff's privilege claims, Plaintiff is ordered to supplement these portions of the log and provided redacted documents, if appropriate. Plaintiff must also identify which privilege—attorney-client privilege or the joint privilege with DePuy—it claims applies to each document.

### C. Unlogged Redacted Documents

Defendants' next objection is that Plaintiff produced numerous heavily redacted documents that were not logged. ECF No.16 at 5. According to Defendants, all of these documents appear to have been produced from the DePuy litigation and they include documents such as interrogatory responses, deposition transcripts, and deposition exhibits. *Id.* at 5-6. Defendants argue these documents relate directly to the validity and enforceability of patents asserted in this case. *Id.* at 8. Plaintiff responds that Defendants never "suggest that the documents it is demanding are remotely likely to have any bearing on any substantive issue in this case." ECF No. 106 at 11 (noting that Defendants only added vague references to validity and enforceability after reading Plaintiff's portion of the instant Joint Motion). Plaintiff further submits that it redacted the documents without logging them pursuant to the "Log Agreement" in Exhibit J. *Id.* at 13, 18.

Having produced the documents in response to Defendants' discovery requests, the Court finds that Plaintiff cannot now claim that they are non-responsive. And, though it

argues the documents are not relevant, Plaintiff did not seek a protective order on the grounds that the requests were not proportional to the needs of the case or that production otherwise was burdensome. *See* Fed. R. Civ. P. 26(b)(1) and (c)(1) (defining the scope of relevant discovery and parameters of protective orders).

The question then is whether, to the extent Plaintiff contends these documents contain privileged information, the parties had an agreement that Plaintiff was not required to log them.[4] When deciding a privilege log dispute, a district court may consider whether "the parties ha[d] an agreement that Plaintiff was not required to log them" and other "agreements or stipulations among the litigants." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). Plaintiff asserts that the parties agreed to the scope of withheld materials to be logged and these documents were not within the scope of that agreement. ECF No. 106 at 13, 17-18. Defendants respond that they did not agree in conversations with Plaintiff regarding privilege logs that Plaintiff was excused from logging any redacted documents over which it might assert attorney-client privilege. *Id.* at 7-8.

---

[4] For this issue, the Court applies Ninth Circuit law. The Federal Circuit clarified that it generally has "deferred to regional circuit law when the issue involves an interpretation of the Federal Rules of Civil Procedure" and only applied Federal Circuit law when determination of the discovery matter "implicates an issue of substantive patent law." *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1377 (Fed. Cir. 2010) (quoting *Manildra Milling Corp. v. Ogilvie Mills, Inc.,* 76 F.3d 1178, 1181–82 (Fed. Cir. 1996)). Here, whether the parties entered into an agreement is a contract or procedural issue unrelated to the substantive patent claims at issue. *See In re Regents of Univ. of California,* 101 F.3d 1386, 1390 n.2 (Fed. Cir. 1996) (addressing a claim of privilege under the community of interest doctrine and confirming that "[f]or procedural matters that are not unique to patent issues, we apply the perceived law of the regional circuit"); *see also In re Spalding*, 203 F.3d at 804 (explaining that the court properly applied regional circuit law in *In re Regents of Univ. of California* because "[t]hat issue concerned parties to a contract; any patent involved was irrelevant to the question of privilege").

Plaintiff is correct that the Court encourages the parties to enter into agreements to narrow discovery only to sources most likely to yield relevant information and to streamline the process to reduce expenses. In this case, the parties agreed in their Joint Discovery Plan to address email discovery separately from non-email document discovery and to determine reasonable limits on email discovery should they choose to embark upon it at a later date. ECF No. 106-8 at 3. They further agreed not to require logging of privileged documents created after this lawsuit commenced if they relate to the litigation and involve litigation counsel, but they expressly specified that "[s]uch documents communications, and/or information created before the date on which this lawsuit was commenced must be included on a privilege log." *Id.*

Discussions regarding any subsequent potential agreements continued by telephone and written correspondence. By email dated July 14, 2020, counsel for Plaintiff wrote to "follow up" on matters discussed in a call with Defendants the day before and stated:

> On the issue of the privilege log, we agree to provide a privilege log listing (i) documents in the prosecution history files, and (ii) communications between McDermott Will & Emery and Orthopaedic Hospital generated between the conclusion of *OH I* and the commencement of the suit against DJO (and their attachments), to the extent such documents were located after a reasonable search and inquiry consistent with the parameters that the parties had previously agreed to. Moreover, we will provide the privilege log from *OH I* served by Orthopaedic Hospital.

ECF No. 106-12 (the purported "Log Agreement"). Neither party provided any contemporaneous response to this letter by Defendants. The next related correspondence is a September 2, 2020 email from Defendants objecting that Plaintiff's production "contains numerous heavy redactions" and asserting that Plaintiff was required to justify all assertions of privilege including those claimed by way of redactions. ECF No. 106-15 at 3. Defendants asked for immediate production of unredacted copies of all of the documents. *Id.* By letter dated the next day, Plaintiff's counsel wrote "your email is the first I am hearing about concerns regarding redactions" and promised to look into the issue and respond to Defendants' counsel "in due course." ECF No. 106-16 at 3. Again, neither party

provided a subsequent, responsive letter. Thus, if the parties had an agreement regarding these unlogged, redacted documents, it is not confirmed by the evidence before the Court. The default standard then—which mirrors the agreement in the parties' Joint Discovery Plan—is that Plaintiff is required to log any redactions based upon privilege.

Defendants contend that Plaintiff waived the right to assert privilege over these documents both by serving the log late and by not logging these documents. ECF No. 106 at 7-9. As an initial matter, the argument that the log was late fails as a result of lack of evidence of an agreement as to a due date. Defendants provide a July 30, 2020 email stating "[d]uring our call last night you assured me that you would produce Orthopaedic Hospital's privilege log last night." ECF No. 106-13 at 2. In a responsive email the same day, Plaintiff's counsel wrote "[w]hen you called me yesterday, I advised that we were *in the process of finalizing* OH's privilege log [. . .] [w]e currently expect to be in a position to serve it on Monday [August 3, 2020]." *Id.* (emphasis added). This exchange does not evidence a firm agreement as to a due date. Nor do Defendants offer any further arguments regarding a due date that would justify a finding of waiver. The record reflects that Plaintiff served the log one week after the July 27, 2020 deadline for substantial completion of document discovery and prior to the September 11, 2020 fact discovery cutoff. *See* ECF No. 67 at 4 (this Court's amended scheduling order). Defendants also do not argue strict construction of Rule 34 such that the log was due within thirty days of service of the document requests. Regardless, such an argument likely would fail because the Ninth Circuit "has reject[ed] a *per se* waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30–day time limit." *Burlington N. & Santa Fe Ry. Co.*, 408 F.3d at 1149. Thus, Defendants' waiver argument based on late service of the log fails.

With regard to Defendants' argument that Plaintiff waived privilege by not logging the documents in the first place, this issue presents a closer call. By letter dated May 13, 2020, Defendants' counsel acknowledged that Plaintiff "recently" produced motions for summary judgment and discovery responses from the DePuy litigation. ECF No. 106-10. However, counsel complained that Plaintiff did not produce deposition

transcripts and related exhibits or expert reports from the DePuy litigation. *Id.* At some point thereafter, Plaintiff produced these documents, but with redactions. By letter dated July 14, 2020, Plaintiff's counsel agreed to provide a privilege log containing (1) prosecution history files, and (ii) "communications between McDermott Will & Emery and Orthopaedic Hospital generated between the conclusion of *OH I* and the commencement of the suit against DJO (and their attachments)", and (3) Orthopaedic Hospital's privilege log from *OH I*. ECF No. 106-12. On August 3, 2020, Plaintiff produced its privilege log. ECF No. 106-14. In response to correspondence from Defendants regarding perceived deficiencies in the log, Plaintiff's counsel responded on August 28, 2020 with tables clarifying the roles and employers of the individuals named in the log and further descriptions of the entries. ECF No. 106-3. Defendants' counsel then responded with the September 2, 2020 email noted above objecting to the unlogged redactions and Plaintiff's counsel responded the next day with promises to look into this newly raised issue. ECF Nos. 106-15, 106-16. No further correspondence is provided.

On this record and from Plaintiff's arguments in the Joint Motion, it appears that prior to September 2nd, Plaintiff's counsel was functioning under the understanding that the parties had agreed to the limits in the Log Agreement as to which privileged documents Plaintiff was required to log. If Plaintiff was incorrect in this assumption, the appropriate remedy is an opportunity to cure. "The doctrine of waiver of the attorney-client privilege is rooted in notions of fundamental fairness" with its primary purpose being "to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340–41 (9th Cir. 1996); *see also Apple Inc.*, 306 F.R.D. at 239 ("[a] party further cannot withhold privileged documents when the party raises a claim or defense that put the privileged communication at issue, discloses the documents to unrelated parties or discloses portions of privileged document"). Thus, "the focal point of privilege waiver analysis should be the holder's disclosure of privileged

communications to someone outside the attorney-client relationship." *Tennenbaum*, 77 F.3d at 341. Here, Plaintiff has not disclosed any of the material asserted to be privileged, having instead extensively redacted all produced documents. Everything in Plaintiff's conduct evinces an intent to protect against disclosure of privileged material and Defendants present no evidence to the contrary. As such, nothing before the Court suggests Defendants have been unfairly prejudiced by Plaintiff's assertion, such that a waiver finding is warranted. Rather, if Plaintiff was mistaken as to the terms of the parties' agreement regarding which documents must be logged, the Court finds it appropriate to allow Plaintiffs to now log the redactions.[5]

Accordingly, Plaintiff is ordered to provide a privilege log that identifies which privilege—attorney-client privilege or the joint privilege with DePuy—it claims applies to each redaction, as well as sufficient information to allow Defendant to verify Plaintiff's privilege claims.

### D. Unlogged Responsive Documents from the DePuy Litigation Privilege Log

Finally, Defendants object that the privilege log Plaintiff produced in the DePuy case indicates that Plaintiff possesses numerous responsive documents that it neither produced nor asserted privilege over. ECF No. 106 at 8-9. Defendants contend the DePuy log shows that Plaintiff possesses over 3,000 documents relevant to the patents-in-suit (logged across 265 pages) that Plaintiff did not produce in this case (where it only has produced 2,157

---

[5] Because with regard to these documents the dispute centers around whether Plaintiff was required to log them, not whether the redactions themselves were proper, the Court does not reach the issue of whether Plaintiff properly asserted joint privilege over some of these documents. The Court also does not reach the issue of whether Plaintiff's redaction of entire pages of documents was appropriate.

documents and a log containing 41 pages). *Id.* As a remedy, Defendants ask the Court to order production of all of these documents without assertion of privilege.

On this argument, Defendants omit the initial step of showing that these documents are relevant. Parties may obtain discovery of relevant, nonprivileged matter, but part of the consideration also is whether the information is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26. That these documents were relevant in a prior case and logged as part of that production does not automatically make them relevant and "proportional to the needs of the case" in a different case involving different claims. Moreover, as the correspondence between the parties demonstrates, they have negotiated numerous agreements in this case regarding the scope of production, which may differ from those made in the DePuy case. Defendants point out that Plaintiff claimed by letter to have "performed a reasonable search for documents responsive to DJO's requests in this litigation." ECF No. 106 at 9 (citing Ex. C at 2). To the extent Defendants believe Plaintiff's search and production were inadequate, they have not sought to compel responses to specific document requests and have provided this Court little to evaluate in determining whether Plaintiff should be compelled to produce the documents logged in the DePuy matter in this case.

Furthermore, though the parties requested to file the DePuy log under seal, Plaintiff notes in the Joint Motion (and the Court confirmed) that a large number of the documents logged on the DePuy privilege log are emails. *See* ECF No. 106 at 20. The parties agreed in their Joint Discovery Plan in this case that they would not seek emails in discovery, absent a future, separate agreement to the contrary. *See* ECF No. 106-8 at 3. Defendants provide no evidence that this agreement did not extend to the DePuy documents, nor do they present the Court with a subsequent, separate agreement governing these emails. Thus, the Defendants have no grounds for arguing that Plaintiff failed to produce the emails.

15

In sum, the Court finds that Defendants have not shown a sufficient basis for the Court to order wholesale production of all of the documents contained on the privilege log Plaintiff produced in the DePuy case.

### E.  Plaintiff's Request for Sanctions

Plaintiff argues that the Court should award Plaintiff the fees it has incurred in addressing this motion pursuant to Rule 37(a)(5)(B). This rule provides that if a motion seeking to compel disclosure or discovery is denied, the court may issue a protective order and "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party [] who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). However, the court "must not" order payment where the motion was substantially justified or circumstances otherwise make such an award unjust. *Id.* Here, the Court has granted Defendants some relief in response to the Joint Motion and, therefore, finds an award of fees unjust in this case.

### IV.  CONCLUSION

For the foregoing reasons, the relief Defendants seek in the Joint Motion is **GRANTED IN PART** and **DENIED IN PART**. The Court orders as follows:

1. On or before **January 11, 2021**, Plaintiff shall supplement the portion of its privilege log related to the Board minutes listed as entries OH_Priv0103 –108 to identify the attorney(s) who provided privileged advice or whose communications were addressed during the meeting and provided redacted minutes, if appropriate.

2. On or before **January 11, 2021**, Plaintiff shall supplement the portion of its privilege log related to patent prosecution files to provide sufficient information to allow Defendants to verify Plaintiff's privilege claims. Plaintiff also must identify which privilege—attorney-client privilege or the joint privilege with DePuy—it claims applies to each document. Plaintiff also shall provide redacted documents, if appropriate.

///
///

3. On or before **January 11, 2021**, Plaintiff shall supplement its privilege log and production (if, upon review, Plaintiff finds it appropriate to revise its redactions) to include entries for the redacted portions of documents produced from the DePuy litigation. Plaintiff must identify which privilege—attorney-client privilege or the joint privilege with DePuy—it claims applies to each redaction, as well as provide sufficient information to allow Defendant to verify Plaintiff's privilege claims.

4. Plaintiff's request for fees pursuant to Rule 37(a)(5)(B) is denied.

5. All other relief sought by Defendants is denied.[6]

**IT IS SO ORDERED.**

Dated: December 22, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge

---

[6] This includes Defendants' request that the Court review some of the documents *in camera*. The Court finds such review unnecessary on these facts.