1
2
3
4
5
6
7

8                   UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   ORTHOPAEDIC HOSPITAL,                Case No.:  3:19-cv-00970-JLS-AHG

12                          Plaintiff,    **ORDER:**

13   v.
                                          **(1) GRANTING IN PART AND**
14   ENCORE MEDICAL, L.P.,                **DENYING IN PART RULE 37**
                                          **SANCTIONS ASSOCIATED WITH**
15                          Defendant.    **DEFENDANT'S MOTION TO**
                                          **COMPEL, and**
16

17                                        **(2) GRANTING IN PART AND**
                                          **DENYING IN PART MOTIONS TO**
18                                        **SEAL**
19

20

21                                        **[ECF Nos. 173, 250, 267, 270]**
22

23

24

25

26

27

28

1

## I.     BACKGROUND

On July 1, 2021, the Court issued an Order Granting in Part and Deferring in Part Defendant's Motion to Compel and for Sanctions (ECF No. 173) ("Motion to Compel"). ECF No. 238 (the "July 1 Order"). The July 1 Order concerned a discovery dispute regarding Defendant's pursuit of materials from a prior litigation involving Plaintiff and the patents-in-suit (the "DePuy litigation").

The parties' dispute regarding DePuy litigation materials was first addressed in part by the Court in its December 22, 2020 Order (ECF No. 144) (the "December 22 Order"), in which the Court granted in part and denied in part the relief sought by Defendant in the parties' Joint Motion for Resolution of Discovery Dispute (ECF No. 106). In compliance with the December 22 Order, Plaintiff provided a supplemental privilege log ("First Supplemental Privilege Log") to Defendant by the Court-imposed deadline of January 11, 2021. *See* ECF No. 173-7. In the Motion to Compel, Defendant argued that the First Supplemental Privilege Log did not comply with the December 22 Order, because the descriptions were insufficient to allow Defendant to verify the claims of privilege, and, further, Defendant contended the log still failed to account for numerous withheld and redacted documents. ECF No. 173 at 8. After meeting and conferring, Plaintiff produced a Second Supplemental Privilege Log and additional documents on February 12, 2021. *See* ECF No. 173-11. After further meet-and-confer attempts and a discovery conference with the Court, Defendant brought the Motion to Compel. ECF No. 173.

In its motion, Defendant contended that Plaintiff had improperly refused to produce all documents responsive to Defendant's Request No. 36 in its First Set of Requests for Production of Documents ("RFP No. 36"), which sought "[a]ll pleadings discovery, expert reports and disclosures, and correspondence from [the DePuy litigation]." ECF No. 173-2 at 48. Defendant further asserted that the new materials Plaintiff produced on February 12, 2021—including 13 new documents, 9 unredacted copies of previously redacted documents, 25 new privilege log entries, and 14 revisions of existing log entries— "strongly suggest[] that [Plaintiff's] withholding of the information is less than innocent."

ECF No. 173 at 9. To remedy Plaintiff's purported misconduct, Defendant asked the Court to (1) conduct *in camera* review of the DePuy litigation documents that Plaintiff continued to withhold and redact, (2) compel Plaintiff to produce all non-privileged documents responsive to RFP No. 36 "related to patent infringement, damages, or validity,"[1] and (3) impose fee-shifting sanctions on Plaintiff.

In the July 1 Order, the Court granted Defendant's motion to compel the depositions of Richard Tarr and Brian Tomko from the DePuy litigation, which Plaintiff had withheld as non-responsive but not privileged, and granted Defendant's request for *in camera* review of certain other materials from the DePuy litigation that Plaintiff had redacted on the basis of privilege. *See* ECF No. 238. The Court deferred ruling on Defendant's request for sanctions pending the completion of its *in camera* review.

On August 23, 2021, the Court issued an Order Regarding Defendant's Motion to Compel and for Sanctions Following In Camera Review (ECF No. 256) (the "August 23 Order"), which resolved all remaining privilege disputes that the Court had previously deferred pending *in camera* review. The Court discusses the rulings in the August 23 Order in more detail in the Discussion section below. Broadly, however, the Court granted in part and denied in part Defendant's Motion to Compel, ordered Plaintiff to produce the unredacted versions of certain previously redacted DePuy litigation documents, ordered Plaintiff to review and update certain privilege log entries and to supplement its privilege log to include deposition exhibits that were withheld on the basis of privilege, and gave the parties a further opportunity to be heard through supplemental briefing on Defendant's request for sanctions in the Motion to Compel in light of the Court's rulings in the August 23 Order. *See id.* at 20–21.

The parties submitted their supplemental briefing to the Court as ordered (*see* ECF

---

[1] During the meet-and-confer process, the parties had agreed to narrow the scope of RFP No. 36 to documents within these parameters. ECF No. 173-3 at 3.

Nos. 259, 269, 272). Additionally, the parties submitted Motions to Seal in connection with each supplemental brief on sanctions. *See* ECF Nos. 257, 267, 270. The Court held a hearing on the supplemental briefing on October 12, 2021. ECF No. 275. During the hearing, the Court gave a tentative ruling and heard oral argument from both sides.

Having considered the briefing and the parties' oral arguments, the Court now **GRANTS in part** and **DENIES in part** Defendant's request for Rule 37 sanctions against Plaintiff, as described in more detail in Section III below.

However, before turning to the merits of Defendant's request for sanctions, the Court will address the parties' Motions to Seal in turn.

## II.   DISCUSSION OF MOTIONS TO SEAL

### A. Legal Standard

As discussed in the Court's July 1 Order, for discovery documents attached to non-dispositive motions and filed under seal pursuant to a valid protective order, "the usual presumption of the public's right of access [to court filings] is rebutted." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). Therefore, a particularized showing of "good cause" under Rule 26(c) of the Federal Rules of Civil Procedure will suffice to seal documents produced in discovery. *Kamakana*, 447 F.3d at 1180.

Because the underlying motions both relate to a non-dispositive dispute regarding discovery documents, the "good cause" standard applies. "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips*, 308 F.3d at 1210-11 (citing *Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1992) (holding that "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c)

test")). This standard is incorporated into the undersigned's Chambers Rules,[2] which explain that "[t]he Court will scrutinize any request to file information under seal, and a request will only be granted if a specific showing is made that justifies sealing. Generic and vague references to 'competitive harm' will almost always be insufficient to justify sealing." Chmbr. R. at 2.

## B. Defendant's First Motion to Seal

First, Defendant filed a Motion to File Supplemental Sanctions Briefing Under Seal ("Defendant's First Motion to Seal") on September 7, 2021. Defendant seeks to seal (1) Exhibits 1, 2, and 3 of counsel Brianne Straka's Declaration in Support of Defendant's Motion for Sanctions (ECF No. 258-2); (2) portions of the Straka Declaration that summarize and describe the contents of Exhibits 1, 2, and 3, as well as "specifics about the sensitive and confidential business arrangement between Defendant and Quinn Emanuel"; and (3) portions of the Supplemental Brief that summarize and describe the timekeeping records, as well as contents of other Exhibits that the Court previously granted leave to file under seal.

### i. *Timekeeping Records*

Defendant's argument for why the Court should permit it to file its timekeeping records under seal is that it includes "Quinn Emanuel's billing rates, as well as the work that Quinn Emanuel has performed for Defendant throughout this matter." Defendant contents this "information is non-public, and in the normal course of business, both Defendant and Quinn Emanuel take all reasonable steps to maintain it in confidence." ECF No. 257-1, Straka Decl. ¶ 2.

Defendant's argument falls short of the "good cause" standard. Defendant fails to meet its burden to explain what, if any, "specific prejudice or harm will result" if the Court

---

[2] Judge Goddard's Chambers Rules are available at https://www.casd.uscourts.gov/judges/goddard/docs/Goddard%20Civil%20Pretrial%20Procedures.pdf.

does not allow the timekeeping records to be filed under seal. *See Phillips*, 308 F.3d at 1210-11. Moreover, courts frequently deny requests to file attorney billing records and hourly rates under seal, because "[i]t is commonplace for the number of hours billed and the hourly rate of attorneys to be openly filed on court dockets; without this information the final fees award appears to be drawn from thin air." *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. C 13-159 CW, 2014 WL 6901744, at *1 (N.D. Cal. Dec. 8, 2014). *See also, e.g.*, *Grouse River Outfitters Ltd. v. Oracle Corp.*, No. 16-CV-02954-LB, 2019 WL 8752333, at *2 (N.D. Cal. Sept. 27, 2019) (rejecting a party's motion to seal its counsel's billing rates and invoices because the party "[did] not adequately explain why disclosure of [the firm's] billing rates and number of hours billed would prejudice it or allow competitors to exploit this sensitive information" and otherwise had "not shown it will suffer any 'specific prejudice or harm' if the documents are not filed under seal").

Accordingly, the Court **DENIES** the Motion to Seal the timekeeping records. To the extent the records may have contained privileged information, it appears Defendant has already adequately redacted the records to avoid disclosure of privileged materials.

### ii.   *Portions of Straka Declaration*

For the same reasons the Court denied the request to seal the timekeeping records, the Court also denies the request to seal portions of the Straka Declaration referring to contents of the records and to "specifics about the sensitive and confidential business arrangement between Defendant and Quinn Emanuel." Defendant asks that this information be sealed because the details of the business arrangement between Defendant and Quinn Emanuel are "non-public, and in the normal course of business, both Defendant and Quinn Emanuel take all reasonable steps to maintain it in confidence." ECF No. 257-1, Straka Decl. ¶ 3.

Once more, Defendant's reason does not constitute a showing of particularized harm, as needed to justify sealing. The Court's conclusion in this regard holds firm even where, as here, the timekeeping records and portions of Straka Declaration reveal that Defendant's counsel have offered a discounted billing rate to Defendant. *See, e.g.*, *Muench*

*Photography, Inc. v. Pearson Educ., Inc.*, No. 12-CV-01927-WHO, 2013 WL 6698465, at *2 (N.D. Cal. Dec. 18, 2013) ("Billing rates for legal services, even discounted ones, are not entitled to be sealed.); *United States ex rel. Doe v. Biotronik, Inc.*, No. 2:09-CV-3617-KJM-EFB, 2015 WL 6447489, at *6–7 (E.D. Cal. Oct. 23, 2015). In *Biotronik*, the court rejected a request to seal a party's fee arrangements with its law firm under very similar circumstances, even in the face of declarations from lead outside counsel and corporate counsel insisting that disclosure of the firm's discounted rates "would hamper the firm's financial relationships with other clients and provide cannon fodder to the firm's competitors" and that "disclosure of the rates Biotronik pays Holland & Knight would impair [Biotronik's] negotiations with other firms." *Id.* at *6. The declarations produced there set forth far more extensive argument than the argument Defendant puts before the Court here,[3] and yet the Court still found it fell short of a "particularized explanation of harm" because the declarations "sketch only rough outlines of hypothetical competitive and litigation difficulties. The same harms could befall any large corporation that employs any large law firm." *Id.* at *7.

For these reasons, the Court **DENIES** the request to seal those portions of the Straka Declaration discussing the contents of the timekeeping records and the discounted rates offered by Quinn Emanuel to Defendant in this litigation.

\\

\\

\\

---

[3] Specifically, the court explained that corporate counsel's declaration "generally describes 'a significant legal matter' in which Biotronik now pursues settlement, and he believes disclosure of Biotronik's obligations to Holland & Knight in this case may derail those negotiations. On a similar note, he reports that Biotronik is currently litigating disputes with one of its three princip[al] competitors and that disclosure of amounts owed to Holland & Knight here would put the firm at a disadvantage in those cases." *Biotronik*, 2015 WL 6447489, at *6.

3:19-cv-00970-JLS-AHG

### iii.   Portions of the Supplemental Brief

Finally, Defendant seeks to seal portions of the Supplemental Brief that summarize and describe the timekeeping records, as well as contents of other Exhibits that the Court previously granted leave to file under seal.

Specifically, Defendant redacted portions of pages 8, 15, 16, and 17 of the Supplemental Brief. The redacted portions on pages 15-16 and 16-17 discuss the total fees associated with the briefing and the discounted rates that Quinn Emanuel has offered to Defendant throughout this matter. For the reasons already discussed, the request to maintain these portions of the Supplemental Brief under seal is **DENIED**.

Page 8 of the supplemental brief contains two separate redactions. First, Defendant has redacted a portion of the brief that discusses the so-called "Tomko letter," which the Court previously allowed to be filed under seal. *See* ECF No. 238 at 7. Defendant's request to keep this portion of the brief under seal is **GRANTED**.

Second, Defendant has redacted a portion of the brief that quotes deposition testimony from Dr. Harry McKellop. *See* ECF No. 258 at 8. However, the Court previously ordered the McKellop deposition transcript to be filed publicly after Plaintiff dropped its request to be filed under seal. ECF No. 238 at 4, 7. For that reason, the Court **DENIES** the request to maintain the reference to the McKellop testimony in Defendant's Supplemental Brief under seal.

### C. <u>Plaintiff's Motion to Seal</u>

Plaintiff filed a Motion to Seal along with its Supplemental Brief in Opposition to Sanctions ("Response Brief") on September 28, 2021. ECF No. 267. Plaintiff seeks to seal portions of the Response Brief and Exhibit 3 to the accompanying Declaration of Christopher Bruno. *Id.* at 2.

In support, Plaintiff argues both the redacted portions of the Response Brief and Exhibit 3 to the Bruno Declaration "contain confidential business information" about DePuy. *Id.* Specifically, the brief "contains information that appears to be sensitive communications among DePuy employees related to patent prosecution opinions

designated as 'Highly Confidential – Attorneys' Eyes Only'" in the DePuy Litigation. *Id.* Similarly, Plaintiff contends that Exhibit 3 to the Bruno Declaration contains "information that appears to be sensitive communications among DePuy employees related to patent prosecution opinions and competitive royalty rate information designated as 'Highly Confidential – Attorneys' Eyes Only'" in the DePuy litigation. *Id.*

Plaintiff has failed to meet its burden of showing that specific harm or prejudice will result if the Court does not seal Exhibit 3 to the Bruno Declaration or the portions of the Response Brief at issue. Indeed, Plaintiff does not point to any harm or prejudice that will result at all, much less specific harm or prejudice. Although Plaintiff mentions that Exhibit 3 "appears to" contain "competitive royalty rate information," as explained above, the Court generally finds "[g]eneric and vague references to 'competitive harm'" to be insufficient to justify sealing. Chmbr. R. at 2. Therefore, Plaintiff's Motion to Seal is **DENIED**.

### D. Defendant's Second Motion to Seal

In connection with its reply, Defendant filed another Motion to File Supplemental Reply Brief in Support of Sanctions Request Under Seal ("Second Motion to Seal") on October 5, 2021. ECF No. 270. The Second Motion to Seal seeks the same relief as the First Motion to Seal. Namely, Defendant seeks to seal (1) Exhibit 7 to the Supplemental Declaration of Brianna Straka in Support of Defendant's Motion for Sanctions ("Supplemental Straka Declaration"), which contains the timekeeping records associated with the Reply Brief (ECF No. 271-2); (2) portions of the Supplemental Straka Declaration (ECF No. 271-1), all of which refer to defense counsel's billing rates and the discounted rate negotiated by Quinn Emanuel and Defendant; and (3) portions of the Reply Brief, which also indirectly refer to the billing rates of counsel by setting forth the total fee amounts sought by Defendant in connection with the Reply Brief.

For the same reasons the Court denied Plaintiff's requests to seal billing rate information in its First Motion to Seal, the Court **DENIES** Plaintiff's Second Motion to Seal.

### III.   DISCUSSION OF FEE-SHIFTING SANCTIONS

#### A. <u>Legal Standard</u>

If the Court grants a motion to compel discovery, Rule 37 of the Federal Rules of Civil Procedure provides that "the court must, after giving an opportunity to be heard, require the party [] whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). But the Court must not order such payment if the opposing party's nondisclosure was substantially justified or if other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii). "The party contesting the discovery sanction on a properly brought motion under Rule 37(a)(5) bears the burden of establishing substantial justification or that other circumstances make an award of expenses unjust." *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, No. 221CV00194FLAMAAX, 2021 WL 4974050, at *16 (C.D. Cal. July 8, 2021) (citing *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994)). *See also Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983) ("The party against whom an award of expenses is sought has the burden of showing the special circumstances that make his or her failure to comply substantially justified").

Additionally, where—as here—the motion to compel is granted in part and denied in part, the Court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(B).

Ultimately, the imposition of Rule 37 sanctions is "left to the sound discretion" of the Court. *O'Connell v. Fernandez-Pol*, 542 F. App'x 546, 547-48 (9th Cir. 2013) (citing *Craig v. Far West Eng'g Co.*, 265 F.2d 251, 260 (9th Cir. 1959), *cert denied*, 361 U.S. 816.

#### B. <u>Summary of the Court's Rulings on Defendant's Motion to Compel</u>

In Defendant's Motion to Compel (ECF No. 173), Defendant requested three forms of relief: (1) that the Court conduct *in camera* review of five deposition transcripts from the DePuy litigation (Tarr, Tomko, Hanes, Narayan, Shen) and certain redacted discovery responses from the DePuy litigation; (2) that the Court compel production of all non-

privileged documents subject to its review that are responsive to Defendant's RFP No. 36 "related to patent infringement, damages, or validity," and require Plaintiff to properly log each privileged document; and (3) that the Court impose Rule 37 fee-shifting sanctions for costs Defendant incurred in "exposing and seeking the Court's assistance with [Plaintiff's] conduct." ECF No. 173 at 11-17.

The Court granted the Motion to Compel in part in its July 1 Order, by requiring Plaintiff to produce the Tarr and Tomko depositions to Defendant outright and granting *in camera* review of the majority of the remaining DePuy litigation materials requested by Defendant. In the August 23 Order, the Court made privilege rulings following its *in camera* review of the unredacted versions of: (1) the deposition transcript of Dr. Mark Hanes; (2) the deposition transcript of Venkat Narayan; (3) the deposition transcript of Dr. Fu-Wen Shen; and (4) certain of Plaintiff's discovery responses from the DePuy litigation (ECF Nos. 172-10, 172-11, 172-12), with certain exceptions.[4] A summary of the Court's privilege rulings from the August 23 Order is as follows, with findings of improper privilege designations or log descriptions provided in bold:

 i. *Hanes Deposition*

       (1) Hanes Dep. 23:14-27:17: **Not privileged**

       (2) Hanes Dep. 43:10-19: **Not privileged**

       (3) Hanes Dep. 44:17-45:7: Privileged and properly logged

       (4) Hanes Dep. 45:19-46:14: **Not privileged**

       (5) Hanes Dep. 46:15-24: Privileged and properly logged

---

[4] Plaintiff was not required to produce its responses to DePuy's Interrogatories Nos. 8 or 10 to the Court for *in camera* review, because the Court found Defendant failed to meet its burden under the test set forth in *United States v. Zolin*, 491 U.S. 554, 572 (1989) to "show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *See In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992) (applying the *Zolin* test to determine the propriety of *in camera* review of materials subject to a claimed attorney-client privilege).

(6) Hanes Dep. 47:16-48:9: Privileged and properly logged

(7) Hanes Dep. 50:16-63:7: **Not privileged**

(8) Hanes Dep. 181:19-198:5: **Privileged but improperly logged**

(9) Hanes Dep. 203:13-208:9: **Privileged but improperly logged**

(10) Hanes Dep. 211:10-218:4: **Privileged but improperly logged**

(11) Hanes Dep. 237:11-249:5: **Privileged but improperly logged**

(12) Hanes Dep. 249:6-251:3: **Not privileged and improperly logged**

(13) Hanes Dep. 252:23-253:18: **Not privileged**

*ii. Narayan Deposition*

(1) Narayan Dep. 210:7-216:14: **Not privileged**

(2) Narayan Dep. 267:23-292:20: **Privileged but improperly logged**

*iii. Shen Deposition*

(1) Shen Dep. 60:19-63:5: **Not privileged**

(2) Shen Dep. 154:7-156:24: **Not privileged**

*iv. Discovery Responses from DePuy Litigation*

(1) Supplemental Response to DePuy Interrogatory No. 6: Properly redacted and logged

(2) Additional Supplemental Response to DePuy Interrogatory No. 6: **Not privileged**[5]

(3) Supplemental Response to DePuy Interrogatory No. 8: Defendant's request for *in camera* review denied in July 1 Order

(4) Supplemental Response to DePuy Interrogatory No. 10: Defendant's request for *in camera* review denied in July 1 Order

---

[5] The Court allowed Plaintiff an opportunity to be heard regarding whether a certain portion of this response summarizing the contents of "[i]nternal DePuy communications" is privileged. Plaintiff declined to do so and voluntarily produced that portion along with the remainder of the response the Court found not privileged. Therefore, the Court treats the entire response as not privileged.

(5) Supplemental Response to DePuy Interrogatory No. 14: **Not privileged**

(6) Response to DePuy Interrogatory No. 24: **Not privileged**

In sum, of 23 redactions, the Court ruled fully in Plaintiff's favor with respect to only six, by denying *in camera* review of two of the redactions and finding four others were properly redacted and logged. The Court also found that five other redacted portions were privileged but were improperly logged. The Court found the remaining 12 redacted portions that it reviewed were not privileged and were improperly redacted on that basis.

Based on these rulings, Defendant asks the Court to order Plaintiff to compensate Defendant's counsel for three discrete categories of the attorney fees Defendant argues it incurred as a result of Plaintiff's discovery abuses: (1) fees associated with Defendant's first motion to compel, filed on October 1, 2020 as a Joint Motion for Resolution of Discovery Dispute (ECF No. 106) and precipitating the Court's December 22 Order; (2) fees associated with Defendant's second Motion to Compel and for Sanctions (ECF No. 173), filed on March 25, 2021, which precipitated the Court's July 1 and August 23 Orders; and (3) fees associated with Defendant's supplemental briefing and attorney fees application, including the supplemental reply brief ("fees on fees").

C. **Whether Plaintiff's Position was Substantially Justified**

In its supplemental response brief, Plaintiff argues that the Court should award no fees to Defendant because Plaintiff's position was substantially justified under Rule 37(a)(5). Specifically, Plaintiff argues that the "substantially justified" standard of Rule 37 is satisfied "if there is a 'genuine dispute' . . . or 'if reasonable people could differ as to the appropriateness of the contested action.'" ECF No. 268 at 5 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1998)). While true, the Court finds that Plaintiff has failed to show why this principle is apposite here. Plaintiff was given the opportunity both in its supplemental brief and during the subsequent hearing to explain why any given redaction was substantially justified, even where the Court found the redacted material was not privileged and ordered it to be produced to Defendant. Yet Plaintiff fails to point to any specific unfavorable ruling in the Court's August 23 Order that is "subject to reasonable debate[.]"

1    *See id.* at 6.

2         Instead, Plaintiff makes broad, general arguments about the complexity of the

3    privilege analysis required under the specific circumstances of reviewing documents from

4    the DePuy Litigation. Namely, Plaintiff explains that, because DePuy and Plaintiff had

5    once been joint clients when pursuing the patents at issue, the joint client doctrine applies

6    to many of the discovery materials from the DePuy Litigation—i.e., certain documents

7    relating to the patent prosecution are not privileged as between DePuy and Orthopaedic

8    Hospital, and thus could be produced freely in that litigation, but remain privileged as to

9    the outside world. Because Plaintiff wished to exercise due care to protect documents

10   potentially subject to the joint privilege, it erred on the side of caution when making

11   redactions. Additionally, Plaintiff cites to case law for the various propositions that (1)

12   communications between non-lawyer employees about matters on which the parties intend

13   to seek legal advice are covered by the attorney-client privilege; (2) a communication of

14   technical information that is primarily concerned with giving legal guidance remains

15   privileged; (3) two parties jointly prosecuting a patent application are commonly

16   considered joint clients; and (4) confidential communications between inventors or

17   employees who work for the same employer can retain their privilege so long as they are

18   made in furtherance of securing legal advice. Based on these principles, Plaintiff explains

19   that it "had to make determinations regarding whether DePuy employees and OH

20   employees (including non-lawyers), even when discussing technical information, were

21   doing so in the context of their efforts to seek legal advice. That is no easy task nor one

22   amenable to bright line drawing." ECF No. 268 at 8.

23        Plaintiff's argument stops short of establishing its position was substantially

24   justified, however, because Plaintiff gives no example of any of the 17 redactions listed

25   above that the Court found not privileged or improperly logged to illustrate how its

26   complex privilege analysis resulted in a mis-designation or inaccurate log description. The

27   only example Plaintiff offers is the so called "Tomko letter" discussed in the Court's

28   July 1 Order (OH_DJO_00075245), a letter from a DePuy representative, Brian Tomko, to

14

Plaintiff's CEO, Dr. Anthony Scaduto, regarding the licensing agreement between DePuy and Plaintiff. *See* ECF No. 172-2. Plaintiff explains that it previously redacted the Tomko letter because it "reasonably believed DePuy's understanding [regarding the value of the patents] was likely based on communications with DePuy's and OH's joint prosecution counsel." ECF No. 268 at 9. However, the Tomko letter was not one of the documents the Court compelled Plaintiff to produce following *in camera* review. Rather, Plaintiff voluntarily provided an unredacted version of the Tomko letter to Defendant in February 2021 along with its Second Supplemental Privilege Log, following meet-and-confer efforts regarding Plaintiff's First Supplemental Privilege Log. Therefore, whether Plaintiff's previous redaction of the Tomko letter was substantially justified has no bearing on the question at hand—namely, whether Plaintiff's 17 redactions and corresponding privilege log entries that the Court found improper when evaluating the documents Defendant sought to compel were substantially justified.

Plaintiff has thus failed to meet its burden of showing that its conduct was substantially justified.

### D. <u>Whether Other Circumstances Make an Award of Fees Unjust</u>

Plaintiff also argues that a fee award would be unjust here for four reasons. First, Plaintiff argues that where the results of a discovery dispute are a "mixed bag," Rule 37 fees are often inappropriate. ECF No. 268 at 9. To bolster this point, Plaintiff notes that the Court refused to award Plaintiff attorney fees in the December 22 Order because the Court had granted Defendant at least some of the relief it sought. *Id.* at 10 (citing ECF No. 144 at 16).

The Court rejects Plaintiff's first argument. A key purpose of Rule 37 sanctions in a situation where one party's discovery conduct necessitates a motion to compel is to "discourage unnecessary involvement of the court in discovery." *Marquis v. Chrysler Corp.*, 577 F.2d 624, 642 (9th Cir. 1978). For that reason, the rule incorporates a ***presumption*** that fee-shifting sanctions will be awarded to the moving party where the Court orders disclosure of materials that are the subject of a motion to compel. Fed. R. Civ.

P. 37(a)(5)(A); *see also Rickels v. City of S. Bend, Ind.*, 33 F.3d 785, 786–87 (7th Cir. 1994) ("Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use legal processes to heap detriments on adversaries [] without regard to the merits of the claims.") (citation omitted).

As the Court discussed in its August 23 Order, Plaintiff's unwillingness to review and revise its privilege designations and log during the meet-and-confer process with Defendant in February 2021—when Defendant pointed out apparent and suspected deficiencies with Plaintiff's supplemental production and Second Supplemental Privilege Log—led to a significant amount of unnecessary court involvement, often on issues that were not at all close calls. *See* ECF No. 256 at 17 ("It is concerning to the Court that Plaintiff failed to recognize at any point during this lengthy process of meeting and conferring, reviewing, and supplementing its privilege log that many of its redactions of the DePuy litigation documents based on claims of privilege were improper").

For example, Plaintiff chose to stand by privilege designations with respect to such materials as deposition testimony regarding deposition exhibits ***that were already produced to Defendant***. *See id.* at 7-8 (discussing redacted deposition testimony concerning an email that was already produced to Defendant); 10 (same). Similarly, many of Plaintiff's privilege log descriptions were completely inaccurate with respect to the authors, recipients, and subject matter of the redacted material. *See id.* at 6, 7, 8, 9 (discussing various deposition exhibits discussed in redacted deposition testimony with corresponding log entries that inaccurately described the conversation participants, authors, and/or the nature or subject matter of the communication). Plaintiff also redacted certain materials on the basis that they "summariz[ed] communication" between attorneys and clients even where the content of any such discussion was not revealed, or where there was no indication whatsoever that an attorney-client communication formed the basis of the redacted statements at issue. *See, e.g.*, *id.* at 12 (discussing a response that referenced an attorney only in a citation to the statement that "[o]ver the course of the 110 Patent Family prosecution, Dr. McKellop had regular contact with DePuy personnel and

16

researchers to exchange confidential information regarding patent prosecution and patent development" but that made no mention of the content of such conversations); *id.* at 13 (discussing a response that merely stated that the inventors "worked closely with prosecution counsel" to file a provisional and final application for a certain patent, which Plaintiff redacted as a response that summarized communication between the inventors and prosecution counsel).

Although not every improper redaction or log entry is necessarily as egregious as these examples, only Plaintiff was in a position to know which redactions were proper and which were not, and, for the reasons discussed in the Court's July 1 Order granting *in camera* review, Defendant had ample reason to believe that at least some of the redacted materials were not in fact privileged. Thus, these circumstances are quite different from the circumstances before the Court in its December 22 Order. Here, Plaintiff's refusal to reconsider its privilege designations ultimately spawned multiple rounds of unnecessary briefing on issues that could have been easily avoided if Plaintiff's counsel had taken a more cooperative and collaborative tack. *See, e.g.*, *Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 513 (D. Nev. 2020) ("Instead of forcing judicial oversight of every dispute, attorneys are expected to approach discovery with an eye toward cooperation, practicality, and sensibility. The governing rules reflect this in several ways, including providing a presumption that reasonable expenses—including attorneys' fees—will be awarded to the party that prevails on a discovery motion. By design, these 'rules should deter the abuse implicit in carrying or forcing a discovery dispute to the court when no genuine dispute exists.'") (quoting Fed. R. Civ. P. 37(a)(4)[6] advisory committee's note to 1970 amendment) (other internal citations omitted). It is under such circumstances that Rule 37 sanctions are typically granted. *See Rickels*, 33 F.3d at 786–87; *Marquis*, 577 F.2d at 642.

---

[6] Subdivision (a)(4) of Rule 37 previously provided for an award of expenses, including attorney fees, to the prevailing party on a motion to compel. That provision is now contained in subdivision (a)(5).

Second, Plaintiff characterizes Defendant's privilege-related complaints as "an ever-shifting target" and contends it was "[a]mbushed by [Defendant's] no-win scenario with its revised position regarding the scope of necessary production from the *DePuy* case and its changed stance on the privilege log in violation of the parties' prior agreement[.]" ECF No. 269 at 10. This position relies on arguments that the Court has already rejected. The Court found in the December 22 Order that there was no evidence that Defendant had changed its stance on the privilege log in violation of the parties' prior agreement. *See* ECF No. 144 at 10-12. The Court also found in its July 1 Order that "Plaintiff's assertion that Defendant is newly seeking materials beyond the agreed-upon scope of documents responsive to RFP No. 36 is easily refuted by the motion itself" and accordingly rejected Plaintiff's argument in that regard. ECF No. 238 at 12.

The parties' entire dispute stems from a single Request for Production for documents from the DePuy litigation related to validity, damages, and infringement. The Court disagrees that this represents an "ever-shifting target." And even if the Court accepted that Defendant had repeatedly changed its request or "demanded more and more," as Plaintiff argues, that would still offer no explanation for Plaintiff's improper privilege designations and completely inaccurate privilege log descriptions. If a party believes that another party is not engaging in discovery in good faith, retaliating in kind is not an appropriate solution. Plaintiff forced the Court to intervene in basic issues like whether a privilege log description accurately describes the authors, recipients, or subject matter of a withheld communication, or whether a deponent's description of a deposition exhibit is privileged notwithstanding the fact that the exhibit itself has not been withheld as privileged. That cannot be justified by any conduct of Defendant. There is no valid reason why those issues could not have been resolved by Plaintiff through further review of the privilege log and redacted materials.

Third, Plaintiff argues that Defendant has not shown it was prejudiced by Plaintiff's discovery conduct. However, as discussed during the hearing, Defendant seeks only attorney fees to compensate it for the unnecessary briefing caused by Plaintiff's

unreasonable withholding of certain materials. The cost incurred in briefing what would otherwise be an unnecessary issue to bring to the Court is itself sufficiently prejudicial to warrant fee-shifting sanctions, as is clear from the very structure of Rule 37. That is, Rule 37(a)(5) provides that a party whose improper nondisclosure necessitates a motion to compel should "pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." However, other, more serious sanctions are available under other provisions of Rule 37 dealing with conduct that results in additional prejudice beyond the incursion of unnecessary fees and expenses—i.e., Rule 37(b)(2) sanctions, which include evidentiary, exclusionary, and even default sanctions to mitigate prejudice that cannot be addressed by fee-shifting sanctions alone. *See* Fed. Rs. Civ. P. 37(b)(2) (providing for more serious sanctions where a party disobeys a court order to provide or permit discovery or fails to produce a person for an IME under Rule 35), (c)(1) (providing for more serious sanctions where a party fails to disclose or supplement its disclosures as required by Rule 26(a) or (e)), (d)(3) (providing for more serious sanctions where a party fails to appear for deposition or to answer interrogatories or a request for inspection).

Therefore, Defendant need not establish prejudice beyond the fees and expenses associated with its motion to compel and subsequent briefing on sanctions, all of which would not have been necessary if not for Plaintiff's misconduct. Indeed, in ordering supplemental briefing on sanctions, the Court required Defendant to "address whether, after reviewing the compelled materials . . . Defendant believes additional Rule 37 sanctions are warranted ***beyond the fee-shifting sanctions requested in the March 25, 2021 Motion to Compel***." ECF No. 256 at 19 (emphasis added). To that end, the Court required Defendant to "explain whether it has been prejudiced by the late production of any information compelled by this Order or by the July 1 Order." *Id.* In other words, a showing of prejudice caused by the late production of the compelled materials might support a request for additional sanctions beyond payment of the fees and expenses necessitated by Plaintiff's discovery misconduct. Because Defendant does not seek additional sanctions, however, it need not show additional prejudice.

Finally, Plaintiff argues an award of fees would be unjust here because Defendant has wasted court resources through its litigiousness, while Plaintiff has sought to compromise when disputes have arisen. Plaintiff contends that the defense counsel who "got more involved" in this case in mid-August 2020 is the source of the discovery conflicts between the parties, because discovery had previously proceeded "unremarkably" with only one discovery dispute when another attorney had been "running the case day to day[.]" ECF No. 268 at 12. Additionally, Plaintiff notes that it did not seek sanctions against Defendant for what it considered unreasonable litigation behavior with respect to an earlier dispute between the parties (the so-called "entities dispute"), instead "stipulat[ing] away discovery sanctions in exchange for an agreement to move forward." *Id*. Plaintiff insists that it has avoided unnecessary disputes by examining its own prior decision-making and voluntarily producing information when Defendant has raised deficiencies with its production. Finally, Plaintiff contends that it has avoided overzealous litigation and the unnecessary incursion of fees by choosing not to object to the Court's privilege determinations, despite its disagreement with the Court's rulings. *Id.* at 13.

The Court finds these arguments unavailing. Defendant's prior conduct is not squarely before the Court and, in any event, is not relevant to the Court's determination of whether Plaintiff's at-issue conduct is sanctionable. While the Court appreciates that Plaintiff made efforts to review its supplemental production and log and voluntarily produce a Second Supplemental Privilege Log in February 2021 when Defendant raised deficiencies with the same, Plaintiff's efforts ultimately fell far short of curing its privilege mis-designations and inaccurate log descriptions, as the Court explained in detail in the August 23 Order. And, for the same reasons the Court found Plaintiff's conduct was not substantially justified, the Court finds the improper claims of privilege and inadequate log entries that Plaintiff failed to remedy—thus forcing court intervention—are in many cases so egregious that the Court is unpersuaded by Plaintiff's claim that its course of conduct is that of a "conscientious, cost-sensitive litigant." *Id.* As for Plaintiff's argument that the Court should credit Plaintiff for judiciously choosing not to object to the Court's discovery

orders under Rule 72, the Court once more notes that Plaintiff was invited to explain why its conduct was substantially justified in the very supplemental brief where it indicates it would have had valid objections to the Court's rulings. Yet Plaintiff failed to defend its designations or privilege log entries underlying any of the Court's unfavorable privilege rulings from the August 23 Order.

Therefore, Plaintiff has failed to meet its burden of showing that other circumstances would make an award of fees unjust pursuant to Rule 37(a)(5).

For these reasons, the Court will award fee-shifting sanctions to Defendant pursuant to Rule 37(a)(5). However, because Defendant's Motion to Compel was granted in part and denied in part, the Court must consider whether to apportion the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(B).

### E. **Whether the Court Should Apportion Fees**

Defendant argues that the Court should not apportion the fee award, and should instead grant the entirety of the fees incurred in all three categories. In support, Defendant points to the "blatant willfulness" of Plaintiff's conduct, and argues that although the Court denied both motions to compel in part, the result is that Plaintiff was ordered to produce "nearly all of the information Defendant sought[.]" Thus, Defendant contends "the equities here support granting Defendant's full fee request without apportionment." ECF No. 258 at 14-15.

The Court agrees with Defendant in part. However, as discussed at oral argument, the Court will not reimburse Defendant for the fees it incurred in connection with the parties' October 1, 2020 Joint Motion for Resolution of Discovery Dispute (ECF No. 106) (the "Joint Motion"), which led to the Court's December 22 Order. The Court finds that these fees are too far afield from the sanctionable conduct at issue. Although the Court recognizes that at least some of the disputes raised by Defendant in the October 2020 Joint Motion developed over time into the disputes raised in Defendant's later Motion to Compel, the Court denied the majority of the relief Defendant sought in the first motion. More significantly, the Court's decision to award sanctions at this juncture is driven

primarily by its finding that Plaintiff acted unreasonably ***after*** the Court issued its December 22 Order, by refusing to continue reviewing and revising its privilege claims and privilege log when Defendant raised obvious persistent deficiencies. Therefore, the Court **DENIES** Defendant's request for fees incurred on the Joint Motion.

For its part, Plaintiff asserts that because the Court found numerous of Plaintiff's privilege claims justified, any fee-shifting sanction should be apportioned accordingly. ECF No. 269 at 14-15. This argument misses the mark. Prior to the Court's *in camera* review, only Plaintiff had access to the redacted materials. For Defendant, the withheld and redacted documents were a black box. Thus, only Plaintiff could meaningfully assess whether its claims of privilege were valid. Yet despite numerous meet-and-confer efforts and even in the face of a Court order requiring Plaintiff to revisit its privilege designations and privilege log, Plaintiff failed to reasonably reassess its designations. Indeed, Plaintiff has presented argument to the Court indicating that Plaintiff may not have reassessed its claims of privilege at all. As the Court noted in its August 23 Order:

> [I]t seems that Plaintiff believed its only obligation pursuant to the December 22 Order was to log the redactions and include descriptions allowing Defendant to verify its claims of privilege—never mind if the descriptions were accurate or if the redacted portions of the documents were actually privileged. If so, that belief would be based on an unreasonable reading of the December 22 Order.

ECF No. 256 at 18.

Apportioning fees based on how many redactions were found proper in the end would only condone this unreasonable, uncooperative discovery conduct. In its Motion to Compel, Defendant sought *in camera* review of a very limited universe of DePuy litigation documents. Plaintiff had ample opportunity both before and after Defendant filed the Motion to Compel to reevaluate whether its claims of privilege over those documents (or redacted portions thereof) were legitimate. Instead, Plaintiff left it to Defendant to initiate motion practice on the issue, and left it to the Court to parse through which redactions were proper and which were not. All of that time was wasted. Therefore, in its discretion, the

Court finds that apportioning the fees according to the percentage of privilege claims that were ultimately found to be valid and properly logged would run counter to the purpose of Rule 37 sanctions, which is to incentivize attorneys to act cooperatively and to deter parties from forcing unnecessary motion practice. *Big City Dynasty*, 336 F.R.D. at 513.[7]

Therefore, the Court will require Plaintiff to pay Defendant all reasonable expenses that Defendant incurred in preparing the second Motion to Compel, as well as the supplemental briefing Defendant was ordered to prepare regarding Rule 37 sanctions.

### F.  <u>Reasonableness of the Fees Sought</u>

The task of apportionment involves not only an evaluation of which work performed by the movant's attorneys is fairly compensable as a result of the conduct that "necessitated the motion," but also an analysis of whether counsel's reported hourly rates and hours expended on the motion are "reasonable." Reasonable attorney fees are calculated based on the lodestar method, which requires the Court to "multiply[] the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). *See also Allergan USA, Inc. v. Prescriber's Choice, Inc.*, No. SACV1701550DOCJDEX, 2018 WL 4745303, at *1 (C.D. Cal. July 16, 2018) (explaining that the lodestar method is generally used to calculate attorney fees for the purpose of Rule 37(a)(5) fee-shifting sanctions); *Collinge v. IntelliQuick Delivery, Inc.*, No. 2:12-0824 JWS, 2014 WL 2569157, at *1 (D. Ariz. June 9, 2014) (same).

---

[7] Additionally, the Court notes that Plaintiff's argument regarding fee apportionment for Defendant's second Motion to Compel focuses only on which of Plaintiff's claims of privilege were found to be proper. *See* ECF No. 269 at 14-15. This argument is not well-taken insofar as it ignores the significant amount of redacted material that the Court found to be improperly logged. The Court finds it important to drive home that providing an accurate privilege log is essential to allow the opposing party the ability to evaluate the basis of the claimed privilege. An inaccurate log description is no more justified than an improper privilege designation.

Defendant bears the burden of demonstrating that its counsel's hourly rates are reasonable and in line with prevailing rates in the relevant legal community of the Southern District of California. *See Herring Networks, Inc. v. Maddow*, No. 19-cv-1713, 2021 WL 409724, at *4 (S.D. Cal. 2021). To do so, Defendant must produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Roberts v. City & Cty. of Honolulu*, 938 F.3d 1020, 1025 (9th Cir. 2019) ("It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate").

In calculating the number of reasonable hours to include in the lodestar, the Court may award fees under Rule 37(a)(5) only for time expended "in actually preparing the moving papers[.]" *Shaw v. Ultimate Franchises*, No. 81802273JLSADSX, 2020 WL 5539963, at *3 (C.D. Cal. Aug. 25, 2020). On the other hand, "hours actually expended in the litigation are not to be disallowed without a supporting rationale." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "Only in rare or exceptional cases will an attorney's reasonable expenditure of time on a case not be commensurate with the fees to which he is entitled." *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988).

Additionally, although Defendant bears the initial burden of documenting its reasonable hours and submitting evidence in support, Plaintiff bears "a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992) (citations omitted). The Court "has a great deal of discretion in determining the reasonableness of the fee[,]" including "the reasonableness of the hours claimed by the prevailing party." *Id.* at 1398.

In its fee application, Defendant reports that its counsel expended 133.1 total hours

24

on the March 2021 Motion to Compel and 77.6 total hours on the supplemental "fees on fees" briefing, amounting to attorney fees of $99,320.43 on the Motion to Compel and $50,199.18 on the supplemental briefing, for a total of **$149,519.61**.

Specifically, defense counsel's billing rates and hours are broken down as follows:

- Lazar Raynal, partner and lead trial counsel: hourly billing rate of **$1,225** from October 2019 - August 2020 and **$1,260** from September 2020 to the present
  - 16.4 hours on Defendant's Second Motion to Compel
  - 2 hours on supplemental sanctions briefing
- Brianne Straka, partner: hourly billing rate of **$925** in August 2020, **$1,005** from September 2020 – August 2021, and **$1,140** from September 2021 to the present
  - 27.2 hours on Defendant's Second Motion to Compel
  - 8.9 hours on supplemental sanctions briefing
- John Poulos, fifth-year associate: hourly billing rate of **$770** from October 2019 – August 2020 and **$875** from September 2020 to August 2021
  - 32.8 hours on Defendant's Second Motion to Compel
  - 1 hour on supplemental sanctions briefing
- William Odom, fifth-year associate: hourly billing rate of **$875** from September 2020 – August 2021 and **$1,065** from September 2021 to present.
  - 56.7 hours on Defendant's Second Motion to Compel
  - 65.7 hours on supplemental sanctions briefing

Additionally, Defendant explains that Quinn Emanuel has provided a flat percentage discount on its attorney fees (15% during the relevant period related to the Second Motion to Compel and 35% during the relevant period related to the supplemental sanctions briefing), resulting in a total request of **$99,320.43** in attorney fees for 133.1 hours spent on Defendant's Second Motion to Compel, and **$50,199.18** in attorney fees for 77.6 hours spent on the supplemental sanctions briefing.

To support the requested lodestar amount, Defendant submits a Declaration of defense counsel Brianne Straka, which explains in detail the amount of experience, skill, and reputation of each attorney involved in working on the Second Motion to Compel and

supplemental sanctions briefing. Specifically, Ms. Straka and Lazar Raynal are both partners at Quinn Emanuel. ECF No. 258-1, Straka Decl. ¶¶ 3, 4. Mr. Raynal is an "internationally recognized, preeminent trial lawyer" admitted to practice before the Supreme Court, the United States Courts of Appeals for the Third, Seventh, and Tenth Circuits, and the United States District Courts for the Northern District of Illinois and Eastern District of Wisconsin. *Id.* ¶ 3. He has "served as lead trial counsel in dozens of high-stakes cases" and has been "widely recognized by leading publications" for his work throughout the United States. *Id.* Ms. Straka is admitted to practice before the Federal Circuit and the United States District Courts for the Northern District of Illinois and Eastern District of Texas, and is further admitted to practice before the United States Patent and Trademark Office ("USPTO"). Ms. Straka also has a Bachelor's of Science in Electrical Engineering, and background in designing and developing software, and has "represented both plaintiffs and defendants in high-stakes intellectual property disputes through all phases of litigation through trial." *Id.* ¶ 4. John Poulos and William Odom are both fifth-year associates. *Id.* ¶¶ 5, 6. Mr. Poulos has a master's degree in Electrical Engineering and is a registered patent attorney admitted to practice before the USPTO, and he has significant federal litigation experience. *Id.* ¶ 5. Mr. Odom, too, has litigated "all types of intellectual property disputes in state and federal court[s] across the United States[.]" *Id.* ¶ 6.

Defendant explains that its counsel, Quinn Emanuel, "is one of the top law firms in the world." ECF No. 258 at 16 (quoting *Proofpoint, Inc. v. Vade Secure, Inc.*, 2020 WL 7398791, at *3 (N.D. Cal. Dec. 17, 2020) (describing Quinn Emanuel as "a large international firm with a highly regarded reputation") and *Transweb, LLC v. 3M Innovative Properties Co.*, 2013 WL 11312429, at *14 (D.N.J. Sep. 24, 2013) (describing Quinn Emanuel as "one of the premier litigation firms in the country, particularly in the field of patent litigation")). Defendant also points to another case before this Court where similar rates were approved for attorneys in the relevant legal community with similar experience at a premier law firm. *See Herring Networks*, 2021 WL. 409724, at *5, *7 (approving hourly rates of $1,150 and $1,050, respectively, for two partners at Gibson, Dunn &

Crutcher LLP, each with over 30 years of legal experience, approving a rate of $720 for a senior associate with more than 10 years of legal experience, and approving a rate of $470 for two mid-level associates with three years of experience each, for work done in 2019 and 2020 on an anti-SLAPP motion). *See also Amphastar Pharms. Inc. v. Aventis Pharma SA*, No. 5:09-CV-00023-SHK, 2020 WL 8680070, at *25 (C.D. Cal. Nov. 13, 2020) (quoting an attorney fee expert's declaration opining in part that Quinn Emanuel is a "peer firm of" Gibson Dunn and of a "similar caliber").

Defendant also notes that this is a technically complex and high-stakes patent case, further justifying Defendant's choice to retain "top-flight counsel[.]" ECF No. 258 at 16. The Court agrees that the fact that this matter is a complex, high-stakes patent litigation justifies approval of higher billing rates. *See NuVasive, Inc. v. Alphatec Holdings, Inc.*, No. 3:18-CV-347-CAB-MDD, 2020 WL 6876300, at *3 (S.D. Cal. Mar. 20, 2020) (approving a Winston & Strawn partner's billing rate of $1,005 per hour and other attorneys' rates of $860 and $885 per hour, and collecting cases from this district to support that these rates were "consistent with the rates charged by attorneys at large national law firms like Winston & Strawn in complex high stakes patent litigation in this district.").

Finally, Defendant argues that its rates are made "all the more reasonable" by the "significant discount off its standard rates" that Quinn Emanuel has provided to Defendant. ECF No. 258 at 16-17. By the Court's calculations, the total discounted fee amount requested by Defendant for its Second Motion to Compel and supplemental sanctions briefing ($149,519.61) works out to an average hourly rate of **$709.63** for 210.7 hours of attorney work across both motions.

Significantly, Plaintiff did not challenge the hourly rates set forth in Defendant's fee application in its briefing, and Plaintiff's counsel confirmed during the October 12 hearing that Plaintiff does not object to the hourly rates reported. Plaintiff also did not argue in its supplemental briefing that the hours expended by defense counsel thus far were unreasonable. *See generally* ECF No. 272. However, during the hearing, Plaintiff's counsel argued that the hours that defense counsel incurred on the supplemental briefing are

27

unreasonable, and that this argument was not waived with respect to the hours spent on Defendant's supplemental reply brief.

Considering all the evidence before it, the Court finds that Defendant has met its burden of establishing its reasonable expenses incurred as a result of unnecessary motion practice related to Plaintiff's improper privilege designations and inadequate privilege log. Defendant has adequately documented the hours its counsel expended on the Second Motion to Compel and the supplemental sanctions briefing, and has supported its attorneys' hourly billing rates with sufficient evidence in the form of Ms. Straka's Declaration documenting their experience, skill, and reputations, as well as citations to cases from this district awarding comparable rates to attorneys from comparable firms. The fact that this is a high-stakes, complex patent litigation further justifies the fee award. Thus, especially taking into account the discount afforded to Defendant by Quinn Emanuel, the Court approves the average hourly rate of $709.63 for 210.7 hours of attorney work, for a total of **$149,519.61**.

In reaching this conclusion, the Court emphasizes that Plaintiff has not refuted the reasonableness of Defendant's billing rates, only the reasonableness of Defendant's billed hours on its supplemental reply brief. Although Defendant bears the initial burden of documenting its reasonable hours, Plaintiff bears a burden of rebuttal requiring submission of evidence to the Court challenging the accuracy and reasonableness of the hours. *Gates*, 987 F.2d at 1398. Plaintiff did not object to the hours billed on Defendant's Second Motion to Compel or on the initial Supplemental Brief in Support of Sanctions. Plaintiff's sole objection was to the hours billed on Defendant's supplemental reply brief, which Plaintiff raised during oral argument and without submitting evidence to the Court in support. Accordingly, Plaintiff has failed to meet its burden of rebuttal in challenging the 77.6 hours expended by counsel on Defendant's supplemental reply brief.

\\

\\

\\

## IV.   CONCLUSION

Defendant's request for Rule 37 fee-shifting sanctions in connection with its Motion to Compel (ECF Nos. 173, 181) and supplemental briefing on sanctions (ECF Nos. 259, 272) is **GRANTED in part** and **DENIED in part**.

The Court awards Defendant fees in the amount of **$149,519.61** to reimburse it for the reasonable expenses and fees incurred in briefing the Motion to Compel and the supplemental sanctions briefing. This amount represents a total of 16.4 hours for Mr. Raynal at an average post-discount rate of approximately $1,040.27 per hour, a total of 36.1 hours for Ms. Straka at an average post-discount rate of approximately $772.54 per hour, a total of 33.8 hours for Mr. Poulos at an average post-discount rate of approximately $738.57 per hour, and a total of 122.4 hours for Mr. Odom at an average post-discount rate of approximately $636.99 per hour. Defendant's request for fee-shifting sanctions in connection with its briefing on the First Motion to Compel (ECF No. 106) is **DENIED**.

Defendant's First Motion to Seal (ECF No. 257) is **GRANTED in part** and **DENIED in part**. Defendant's request to file information related to its counsel's billing rates (including information regarding the discounted billing rates) is **DENIED**. Defendant is accordingly **ORDERED** to separately file Brianne Straka's Declaration in Support of Defendant's Motion for Sanctions (ECF No. 258-1) and Exhibits 1, 2, and 3 of the Straka Declaration (ECF No. 258-2) in a public docket entry. Additionally, Defendant is **ORDERED** to file its Supplemental Brief in Support of Motion for Sanctions (ECF No. 258) in a public docket entry, with only the redaction on page 8 on lines 9-11 related to the Tomko letter. All other redactions must be removed from the public filing.

Plaintiff's Motion to Seal (ECF No. 267) is **DENIED**. Plaintiff is **ORDERED** to separately file a completely unredacted version of its Supplemental Brief in Opposition to Sanctions (ECF No. 268) and Exhibit 3 to the accompanying Declaration of Christopher Bruno (ECF No. 268-1) on the public docket.

Defendant's Second Motion to Seal (ECF No. 270) is **DENIED**. Defendant is **ORDERED** to separately file its Supplemental Reply Brief in Support of Sanctions

Request Under Seal (ECF No. 271), the Supplemental Straka Declaration (ECF No. 271-1), and the timekeeping records regarding the fees expended on the Reply Brief (ECF No. 271-2) on a public docket entry.[8]

**IT IS SO ORDERED.**

Dated:  November 19, 2021

_____

Honorable Allison H. Goddard

United States Magistrate Judge

---

[8] Defendant may maintain all existing redactions contained in its timekeeping records that are currently filed under seal (ECF Nos. 258-2 and 271-2). The Court recognizes that these redactions protect attorney-client privileged information. *See Real v. Cont'l Group, Inc.,* 116 F.R.D. 211, 213 (N.D. Cal. 1986) (explaining that "attorney-client privilege embraces attorney time, records and statements to the extent that they reveal litigation strategy and the nature of the services provided.").